Arthur MEYER (through his estate), Dorothy Watson, Harold Nees, George Patterson, and Ross Strauch (through the co-administrator of his Estate, Arlene Long), as assignees of Federal Deposit Insurance Corp., Plaintiffs–Appellees,

v.

Robert Albert RIGDON, Defendant–Appellant.

No. 93–3743.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1994.

Decided Sept. 22, 1994.

---

George Plews (argued), Donn H. Wray, Plews & Shadley, Indianapolis, IN, for appellees.

William Garrison (argued), Jeanette E. Bahnke, Saikley, Garrison & Colombo, Danville, IL, for appellant.

Before CUDAHY, KANNE, and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

Robert Rigdon was the president of People's State Bank of Clay County, Indiana. He was also a member of the Bank's board of directors and owned a controlling interest in the Bank. In August of 1984, the Federal Deposit Insurance Corporation ("FDIC") and the Indiana Department of Financial Institutions determined that the Bank was insolvent. Thereafter, the Bank was closed and the FDIC was appointed receiver of the Bank pursuant to 12 U.S.C. § 1821(e). The FDIC then brought suit against Rigdon and the other members of the Bank's board of directors—Arthur Meyer, Dorothy Watson, Harold Nees, George Patterson, and Ross Strauch and Arlene Long as co-administrators of the estate of Ross Strauch—in the United States District Court for the Southern District of Indiana. The FDIC's complaint alleged, *inter alia,* that the defendants breached their fiduciary duty to the Bank in "managing, conducting, supervising, and directing the Bank's making, supervising and collecting of loans." The FDIC's complaint further itemized specific instances in which the defendants had allegedly breached their fiduciary responsibilities.

The district court entered a default judgment against Rigdon in the FDIC case because he failed to respond to the complaint. Thereafter, the FDIC assigned its default judgment to Rigdon's co-defendants ("Meyer Defendants") under the terms of a settlement agreement dated July 24, 1989. The Meyer Defendants subsequently filed a motion in the Indiana federal court requesting the court enter a final money judgment against Rigdon based on the default judgment. The district court granted the motion and entered a money judgment against Rigdon in the amount of $1,613,181.43.

In February of 1992, Rigdon filed a bankruptcy petition under chapter seven of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of Illinois. Shortly thereafter, the Meyer Defendants filed a complaint in the bankruptcy court seeking a determination as to whether Rigdon could discharge his debt arising from the Indiana federal court judgment. The Meyer Defendants subsequently filed a mo-

tion for summary judgment in the Bankruptcy Court, arguing, *inter alia,* that Rigdon's debt was not dischargeable under 11 U.S.C. § 523(a)(11). That provision provides in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (11) provided in any final judgment, unreviewable order, or consent order or decree entered in any court of the United States or of any state, issued by a Federal depository institutions regulatory agency, or contained in any settlement agreement entered into by the debtor, arising from any act of fraud or defalcation while acting in a fiduciary capacity committed with respect to any depository institution or insured credit union.

Rigdon argued that section 523(a)(11) was not controlling because the judgment at issue was a default judgment and under the prevailing case law, default judgments are not entitled to preclusive effect in discharge exception proceedings. The bankruptcy court granted the Meyer Defendant's motion for summary judgment. According to the bankruptcy court, the default judgment "fits within the definition of 'any final judgment' under § 523(a)(11)." The court stated that "had Congress intended to exempt default judgment[s] obtained by Federal depository regulatory institutions from the scope of the term '*any* final judgment,' it could easily have done so by wording the statute differently."

Rigdon appealed to the district court, again claiming that section 523(a)(11) does not apply to default judgments. Rigdon further argued that section 523(a)(11) was inapplicable because the FDIC's complaint did not allege that he had committed acts of "defalcation." The district court rejected Rigdon's arguments. First, the court found

that the "plain, straightforward and unqualified language of § 523(a)(11)" dictates the outcome of the dischargeability issue and prevents relitigation of the issue in either the bankruptcy court or the district court. Second, the court found that the word "defalcation" encompasses "the failure to carry out fiduciary duties," which is precisely what the FDIC's complaint charged. Rigdon now appeals to this court.

### Discussion

We, like the district court, review the bankruptcy court's factual findings for clear error and its legal conclusions *de novo. In re Wiredyne, Inc.,* 3 F.3d 1125, 1126 (7th Cir.1993). The proper construction of section 523(a)(11) is a legal issue which we review *de novo. Oviawe v. INS,* 853 F.2d 1428, 1431 (7th Cir.1988).

### Applicability of section 523(a)(11)

The Bankruptcy Code delineates several exceptions to the normal rule that all debts are dischargeable in bankruptcy. For instance, under section 523(a)(4) a debtor may not discharge any debt resulting from "fraud or defalcation while acting in a fiduciary capacity...." The bankruptcy court normally makes an independent determination as to whether a debt is excepted from discharge under section 523(a)(4). *See In re Bercier,* 934 F.2d 689, 692 (5th Cir.1991) ("The bankruptcy court has exclusive jurisdiction to determine dischargeability of these debts."). However, if a court of competent jurisdiction has previously entered judgment against the debtor for "fraud or defalcation while acting in a fiduciary capacity," the debtor may not relitigate the underlying facts in the bankruptcy court. In other words, the doctrine of collateral estoppel[1] applies in bankruptcy discharge exception

---

1. As used in this opinion, "collateral estoppel" is synonymous with the term "issue preclusion," " 'which refers to the effect of a judgment in foreclosing litigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action.' " *LaSalle Nat'l Bank v. County of DuPage,* 856 F.2d 925, 930 n. 2 (7th Cir.1988), *cert. denied,* 489 U.S. 1081, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989) (quoting *Kirk v. Board of Educ.,* 811 F.2d 347,

351 n. 7 (7th Cir.1987)). The term "collateral estoppel" must be distinguished from the terms "res judicata" or "claim preclusion," which refer to " 'the preclusive effect of a judgment in foreclosing litigation of matters that were or could have been raised in an earlier suit.' " *Id.* The Supreme Court has held that res judicata does not apply in bankruptcy discharge exception proceedings. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

proceedings. *Klingman v. Levinson,* 831 F.2d 1292, 1294–1295 (7th Cir.1987); *Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) ("Our prior cases have suggested, but have not formally held, that the principles of collateral estoppel apply in bankruptcy proceedings under the current Bankruptcy Code.... We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).").

■ Collateral estoppel is a judge-made doctrine that serves the "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (citation omitted). For collateral estoppel to apply, four elements must be met: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action." *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 906 (7th Cir.1990).

■ As Rigdon correctly points out, a default judgment is normally not given preclusive effect under the collateral estoppel doctrine because no issue has been "actually litigated." *In re Cassidy,* 892 F.2d 637, 640 n. 1 (7th Cir.), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). However, because collateral estoppel is a common law creature, it can, of course, be pre-empted by Congressional action.

Pre-emption is essentially an issue of Congressional intent. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985) ("The purpose of Congress is the ultimate touchstone.") (citation omitted). In determining Congress' intent, we initially focus on the state of the law as it existed prior to the passage of section 523(a)(11). Under section 523(a)(4), a debtor was already prevented from discharging any debt "for fraud or defalcation while acting in

a fiduciary capacity." Section 523(a)(11) also prevents a debtor from discharging a debt arising from his "fraud or defalcation while acting in a fiduciary capacity." Section 523(a)(11) is narrower than section 523(a)(4), in that it applies only to acts of fraud or "defalcation" "committed with respect to any depository institution or insured credit union." Nonetheless, as is readily apparent, any debt dischargeable under section 523(a)(11) was already dischargeable under section 523(a)(4). Why then did Congress go to the trouble of enacting section 523(a)(11)?

■ The simple answer is that Congress wanted to expand the preclusive effect given certain prior actions in bankruptcy discharge exception proceedings. In order to invoke collateral estoppel, an issue must have been "actually litigated" in the prior action. Accordingly, default judgments are not given preclusive effect in subsequent court proceedings. Nor are most consent decrees. Consent decrees, "while settling the issue definitively between the parties, normally do not support an invocation of collateral estoppel." *La Preferida,* 914 F.2d at 906 (citations omitted). "The rationale behind this general rule is that issues underlying a consent judgment generally are neither actually litigated nor essential to the judgment." *Id.* (citation omitted). Collateral estoppel may only be applied to consent decrees if "'the parties could reasonably have foreseen the conclusive effect of their actions.'" *Klingman,* 831 F.2d at 1296 (quoting 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.444[1], at 794 (2d ed. 1984)). *See also* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4443, at 382 (1981) ("Issue preclusion does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation."). Similarly, settlement agreements not approved by a court are not given preclusive effect.

■ Administrative agency decisions will only be given preclusive effect under the collateral estoppel doctrine if (1) the original action was properly before the agency, (2) the same disputed issues of fact are before the court as were before the agency, (3) the

agency acted in a judicial capacity, and (4) the parties had an adequate opportunity to litigate the issue before the agency. *Frye v. United Steelworkers of Am.*, 767 F.2d 1216, 1220 (7th Cir.), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 461 (1985); *Lightsey v. Harding, Dahm & Co., Inc.*, 623 F.2d 1219, 1221 (7th Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 855, 66 L.Ed.2d 799 (1981).

■■■ The plain language of section 523(a)(11), however, alters the common law collateral estoppel rules with respect to default judgments, settlement agreements, and certain administrative agency decisions. Section 523(a)(11) provides that a debt arising from the debtor's breach of fiduciary duty to a financial institution is not dischargeable if that debt is provided in *"any* final judgment, unreviewable order, or consent decree or order" entered in *any* federal or state court; "any settlement agreement entered into by the debtor;" and any order "issued by a Federal depository institutions regulatory agency." (emphasis added). The plain language of section 523(a)(11) requires the bankruptcy court give preclusive effect to dispositions, like default judgments (a default judgment is *any* judgment) and non-court approved settlement agreements, that would not be given preclusive effect under the common law. Therefore, we must conclude that Congress intended to preempt the common law by enacting section 523(a)(11).

Any other interpretation would render section 523(a)(11) a redundancy. Section 523(a)(11) prevents the discharge of debts arising from the same substantive conduct as section 523(a)(4), i.e., "fraud or defalcation while acting in a fiduciary capacity." If section 523(a)(11) also preserves the common law collateral estoppel doctrine, as Rigdon contends, it would be virtually identical in effect to section 523(a)(4). Congress could not have meant for such a specific provision to be mere surplusage. *See United States v. Dean*, 908 F.2d 215, 217 (7th Cir.1990), *cert.*

*denied*, 501 U.S. 1206, 111 S.Ct. 2801, 115 L.Ed.2d 974 (1991) (citing *United States v. Franz*, 886 F.2d 973, 978 (7th Cir.1989)). We do not believe that Congress, in enacting section 523(a)(11), engaged in a "meaningless legislative exercise." *See Brundidge Banking Co. v. Pike County Agric. Stabilization & Conservation Comm.*, 899 F.2d 1154, 1163 (11th Cir.1990).

Our reading of section 523(a)(11) is supported by its legislative history. Congressman Jack Brooks, Chairman of the House Judiciary Committee, made the following statement during the floor debate on section 523(a)(11) and (12): [2]

> The second part of the bill I would like to briefly mention is the savings and loan section. These are changes to the Bankruptcy Code which close off the bankruptcy escape hatch for bank and thrift insiders whose acts of financial fraud and malice will end up adding perhaps half a trillion dollars to the Federal debt.... *Banking regulators will now be able to prosecute these con artists with the needed confidence that the victories won in enforcement proceedings will not be nullified in bankruptcy proceedings.*

136 Cong.Rec. H13288, 13289 (daily ed. October 27, 1990) (statement of Rep. Brooks) (emphasis added). Of course, the only way a banking regulator's victory could be nullified is if a debtor is permitted to discharge a debt arising from his misdeeds. That is a possibility under section 523(a)(4) because the bankruptcy court is only required to give preclusive effect to a final judgment on the merits. Before Congress enacted section 523(a)(11), a bank officer could enter into a private settlement agreement with the FDIC, for instance, admit that he had committed acts of fraud, and still have the debt arising from his fraud discharged in bankruptcy. By enacting section 523(a)(11), Congress intended to limit the bankruptcy court's ability to nullify regulatory victories

---

**2.** New section 523(a)(12) provides: "(a) A discharge under sections 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—(12) for malicious or reckless failure to fulfill any commitment by the debtor to a Federal deposito-

ry institutions regulatory agency to maintain the capital of an insured depository institution, except that this paragraph shall not extend any such commitment which would otherwise be terminated due to any act of such agency."

through its independent power to determine dischargeability.

Our research has revealed only one case interpreting section 523(a)(11) and that came from a bankruptcy court in Florida. *In re Harris,* 135 B.R. 434 (Bankr.S.D.Fla.1992). In that case, Bruce N. Harris filed a bankruptcy petition pursuant to chapter seven of the Bankruptcy Code. The National Credit Union Administrative Board ("NCUAB")[3] subsequently commenced an adversary proceeding ("Adversary") in the bankruptcy court seeking to have Harris' potential debt to it declared non-dischargeable under section 523(a)(11). NCUAB had previously commenced a civil action against Harris in the United States District Court for the District of Massachusetts alleging that Harris, while serving in various positions on the Board of Directors of Barnstable Community Federal Credit Union, "participated in fraudulent schemes in violation of state and federal criminal laws, and the Federal Credit Union Act." *Id.* at 435. The district court case had not yet been resolved by the time Harris filed his bankruptcy petition. Consequently, NCUAB sought a stay of the bankruptcy proceedings until that case had been decided.

The bankruptcy court noted that section 523(a)(11) had recently been added to the bankruptcy code. According to the court, "[i]ts obvious aim, coming as it did in the midst of a national banking crisis, is to streamline litigation against the scoundrel bankers, and prevent the use of the Bankruptcy Court as a shield against such litigation." *Id.* at 436. In granting the stay, the court stated the following:

> Arguably, 523(a)(11) adds little to the existing state of the law regarding nondischargeability. Since fraud can be determined to be nondischargeable pursuant to 523(a)(2) and (4), the fraudulent banker would in most cases be prevented from receiving a discharge of the resulting debt. *The difference is that the issue would have to be proven in the bankruptcy court.* Further, there is significant case law relative to if and when pre bankruptcy judgments based on fraud govern the issue of

dischargeability. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) [ (holding that the doctrine of *res judicata,* as opposed to collateral estoppel, does not apply in discharge exception proceedings) ]; *In re Neely,* 125 B.R. 392 ( [Bankr.] S.D.N.Y.1991).

Statutory construction requires this Court to assume that Congress knew the state of the law under 523(a)(2) and (4) when it nevertheless decided to add Section 523(a)(11) to the Code. This Court's duty is to enforce that section as adopted by Congress.

This court believes that the language of 523(a)(11) requires that the motion at issue be granted and the Adversary stayed. To construe it otherwise would be to render it essentially meaningless and to cause duplicative litigation which would be wasteful of the resources of the Court and the parties. . . .

Conducting a full trial on dischargeability in this forum will essentially require all the proofs which will ultimately be introduced in the District Court Case. This would not only be inconvenient to both parties and a significant waste of judicial economy, but it would also raise the specter of inconsistent judgments.

*Id.* We agree that in order to give meaning to section 523(a)(11) it must be read as altering the common law rules concerning the preclusive effect given certain actions in bankruptcy discharge exception proceedings. We also agree that Congress' intent in passing section 523(a)(11) was to prevent "inconsistent judgments."

However, we do not agree with the bankruptcy judge's subsequent statement in *Harris* that, "[f]ollowing a judgment in the District Court Case, this Court may accept or request, in its discretion, further evidence from the parties to supplement the record of the District Court Case." *Id.* at 437. Under the plain language of section 523(a)(11), the bankruptcy court is required to give preclusive effect to, *inter alia,* certain final judgments entered by federal courts. If the debt results from a final judgment arising from

---

3. The National Credit Union Administration is an independent agency of the executive branch managed by the NCUAB. *See* 12 U.S.C. § 1752a.

the debtor's fraud or "defalcation" while acting in fiduciary capacity of a depository institution, the debt is *per se* nondischargeable in bankruptcy. No additional evidence need or may be submitted to the bankruptcy court—the debtor is estopped from challenging the nondischargeability of his debt.

In summary, we conclude that Congress pre-empted the common law collateral estoppel doctrine when it enacted section 523(a)(11). Under the plain language of that section, *any* final judgment, including default judgments, must be given preclusive effect so long as they arise from the debtor's fraud or "defalcation" while acting in a fiduciary capacity for a financial institution. Accordingly, the only issue left for us to consider is whether the default judgment entered against Rigdon arose from "any act of fraud or defalcation while acting in a fiduciary capacity."

### Fiduciary Capacity and Defalcation

The FDIC's complaint alleged that Rigdon breached his fiduciary duty to the Bank "[i]n managing, conducting, supervising, and directing the bank's making, supervising and collection of loans...." Because of Rigdon's conduct, the FDIC alleged that it had suffered losses in its capacity as receiver of the Bank "due to nonpayment and default by debtors and guarantors on imprudently made loans."

### 1. Fiduciary Duty

The existence of a fiduciary relationship is a question of federal law under section 523(a)(11). *See In re Angelle,* 610 F.2d 1335, 1341 (5th Cir.1980). Under 11 U.S.C. § 523(e), "[a]ny institution-affiliated party of a depository institution or insured credit union shall be considered to be acting in a fiduciary capacity" for the purposes of section 523(a)(11). The Bankruptcy Code adopts the banking law definition of institution-affiliated party. 11 U.S.C. § 101(33)(a). That law, the Federal Deposit Insurance Act, defines institution-affiliated party as:

> (1) any *director,* officer, employee, or *controlling stockholder* (other than a bank holding company) of, or agent for, an insured depository institution....

12 U.S.C. § 1813(u) (emphasis added). Section 523(e) may not be applicable to this case, however, because it was enacted at least six years after Rigdon ceased to be member of the Bank's Board of Directors. Yet we need not decide whether Congress intended for section 523(e) to be applied retroactively because "state law ... may create fiduciary status in an officer which is cognizable in bankruptcy proceedings...." *In re Long,* 774 F.2d 875, 878 (8th Cir.1985). In Indiana, a director owes a fiduciary duty to the corporation and its shareholders. *See Yerke v. Batman,* 176 Ind.App. 672, 376 N.E.2d 1211, 1214 (1978) ("It is correct ... that, concerning matters affecting the general well being of the corporation, the officers and directors are fiduciaries to the corporation and to the shareholders of the corporation."); *Griffin v. Carmel Bank & Trust Co.,* 510 N.E.2d 178, 182 (Ind.Ct.App.1987) ("It needs no elaborate citation of authority to demonstrate that directors and officers of a corporation act in a fiduciary capacity, and their acts must be for the benefit of the corporation."); *see also In re Marchiando,* 13 F.3d 1111, 1115–1116 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994) (recognizing in dicta that a director owes a fiduciary duty to the corporation and its shareholders for the purposes of section 523(a)(4)). Therefore, Rigdon was acting in a fiduciary capacity with respect to the Bank and its shareholders.

### 2. Defalcation

Rigdon contends that the FDIC's complaint does not allege that he engaged in acts of "defalcation" within the meaning of section 523(a)(11). Specifically, Rigdon argues that mere acts of negligence are not "defalcations." "Defalcation" is not defined in the Bankruptcy Code. Nor does the legislative history of section 523(a)(11) shed any light on congressional intent as to how it should be interpreted. However, the term "defalcation" has been used in the Bankruptcy Code since 1841. *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 511 (2d Cir.1937). Therefore, we can assume that Congress intended to give the term "defalcation," as it is used in section 523(a)(11), the same meaning that courts have given it in

interpreting other provisions of the Bankruptcy Code.

The leading case defining "defalcation" is *Central Hanover Bank & Trust Co. v. Herbst.* In that case, Judge Learned Hand noted that "[c]olloquially perhaps the word, 'defalcation,' ordinarily implies some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts.... Whatever was the original meaning of 'defalcation,' it must here have covered other defaults than deliberate malversations, else it added nothing to the words, 'fraud or embezzlement.' " *Id.* at 511. The court went on to state, however, that "[w]e do not hold that no possible deficiency in a fiduciary's accounts is dischargeable; in *[In] re Bernard,* 87 F.2d 705, 707 [ (2nd. Cir.1937) ], we said that 'the misappropriation must be due to a known breach of duty, and not to mere negligence or mistake.' Although that word [misappropriation] probably carries a larger implication of misconduct than 'defalcation,' 'defalcation' may demand some portion of misconduct; we will assume arguendo that it does." *Id.* at 512.

In interpreting *Herbst,* courts have split over the question of whether mere negligent acts may be "defalcations." In *In re Johnson,* 691 F.2d 249 (6th Cir.1982), the court adopted an "objective standard for finding a defalcation." *Id.* at 255. Under this standard, the bankruptcy petitioner is charged with knowledge of the law and his intent or motive is irrelevant in determining whether a debt is dischargeable. According to the court, "creating a debt by breaching a fiduciary duty is a sufficiently bad act to invoke the section 17(a)(4) exception even without a subjective mental state evidencing intent to breach a known fiduciary duty or bad faith in doing so." *Id.* at 256. Nonetheless, the court held that "mere negligence or a mistake of fact" is insufficient to constitute a "defalcation." *Id.* at 257.

In *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980), the Fifth Circuit interpreted the term "misappropriation" as it was used in section 17(a)(4), the predecessor of section 523(a)(4). In that case, the bankruptcy petitioner argued that in order for a debt to be excepted from discharge under section 17(a)(4), it would have to be shown that he "intentionally diverted, stole, or misappropriated funds...." *Id.* at 375. The petitioner relied on language in *In re Bernard,* 87 F.2d 705 (2d Cir.1937), "to the effect that misappropriation under section 17(a)(4) 'must be due to a known breach of the duty, and not to mere negligence or mistake.' " *Carey Lumber Co.,* 615 F.2d at 375–376 (quoting *Bernard,* 87 F.2d at 707). The court initially held that, despite the language in *In re Bernard* that a misappropriation "must be due to a known breach of the duty," the petitioner is "charged with knowledge of his legal duties." *Id.* at 376. The court also went on to address the issue of whether a misappropriation may occur through negligent conduct:

> Moreover, there is doubt as to the continued validity of the dicta in *In re Bernard* that misappropriation under section 17(a)(4) may not be found on the basis of "mere negligence or mistake." In *In re Hammond,* [98 F.2d 703 (2d Cir.1938), *cert. denied,* 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1938) ] supra, a debt incurred by a bankrupt corporate director who had unlawfully taken advantage of a corporate opportunity that the corporation had been financially unable to take advantage of was held nondischargeable in bankruptcy under section 17(a)(4), despite a complete absence of evidence that the director's wrongdoing had been intentional. More recently, in *Matter of Kawczynski,* supra, the court wrote that " '[d]efalcation' has been interpreted by the Second Circuit to include innocent defaults." 442 F.Supp. [413] at 418 [ (W.D.N.Y.1977) ]. Thus there is no requirement that a misappropriation must be shown to have been intentional in order to be covered by section 17(a)(4).

*Id.*

The Fifth Circuit more recently defined the term "defalcation" within the meaning of section 523(a)(4) as "a willful neglect of duty, even if not accompanied by a fraud or embezzlement." *In re Moreno,* 892 F.2d 417, 421 (5th Cir.1990) (citing L. King, 3 *Collier on Bankruptcy* ¶ 523.14 at 523–93 to 523–95 (15th ed. 1988)); *see also In re Bennett,* 989

F.2d 779 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993); *Matter of Davis,* 3 F.3d 113, 115 (5th Cir. 1993) (citing, *inter alia, Carey Lumber,* 615 F.2d at 375–376) ("Defalcation includes willful neglects of duty unaccompanied by fraud or embezzlement.").

By using the word "willful," the Fifth Circuit has put into question the validity of the *Carey Lumber* dicta concerning the issue of whether a negligent act may be a "defalcation." Black's Law Dictionary 1599 (6th ed. 1990) defines "willful" as "[p]roceeding from a conscious motion of the will; voluntary; knowingly; deliberate. Intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary." According to Black's, "[a] willful act differs essentially from a negligent act. The one is positive and the other negative." *Id.*

A bankruptcy court in the Fifth Circuit recently tried to reconcile *Matter of Moreno* and *Carey Lumber. See In re Gaubert,* 149 B.R. 819 (Bankr.E.D.Tex.1992). The *Gaubert* court rejected an argument made by the FDIC, based on *In re Chavez,* 140 B.R. 413 (Bankr.W.D.Tex.1992), that a mere breach of fiduciary duty meets the requirement for establishing a "defalcation." The court reconciled *Moreno* and *Carey Lumber* in the following manner:

As a mere breach of fiduciary duty is negligent, the *Moreno* court's use of the term "willful" takes mere breaches of duty out of the defalcation category. On the other side, the *Carey Lumber* decision demonstrates that a standard that is less than intent is appropriate. It is consistent with the term willful and the purposes of

the Bankruptcy Code to impose a standard of recklessness.

*Gaubert,* 149 B.R. at 827.

The Eleventh Circuit has also recently addressed the perplexing "defalcation" question. In *Quaif v. Johnson,* 4 F.3d 950 (11th Cir.1993), the court stated the following:

"Defalcation" refers to a failure to produce funds entrusted to a fiduciary. *In re Alvey,* 56 B.R. 170 (Bankr.W.D.Ky.1985). However, the precise meaning of "defalcation" for purposes of § 523(a)(4) has never been entirely clear. *[In re] Turner,* 134 B.R. 646 at 657 [ (Bkrtcy.N.D.Okl.1991) ]. An early, and perhaps the best, analysis of this question is that of Judge Learned Hand in *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2nd Cir.1937). Judge Hand concluded that while a purely innocent mistake by the fiduciary may be dischargeable, a "defalcation" for purposes of this statute does not have to rise to the level of "fraud," "embezzlement," or even "misappropriation." *Id.* at 512. Some cases have read the term even more broadly, stating that even a purely innocent party can be deemed to have committed a defalcation for purposes of § 523(a)(4). *See [In re] McCormick,* 70 B.R. [49] at 51 [ (Bkrtcy.W.D.Pa.1987) ]; *American Ins. Co. v. Lucas,* 41 B.R. 923 (W.D.Pa.1984).

*Id.* at 955. The Eleventh Circuit held that the conduct at issue in *Quaif* "was far more than an innocent mistake or even negligence." *Id.* Numerous district and bankruptcy courts have also addressed the question of whether negligent acts may be "defalcations." Most have concluded that they can.[4]

 Nonetheless, we agree with the Sixth Circuit (and possibly the Fifth) that a

---

4. *See, e.g., Laughter v. Speight,* 167 B.R. 891, 895 (W.D.Ark.1993) (quoting *In re Oot,* 112 B.R. 497 (Bankr.N.D.N.Y.1989)) ("Defalcation may be established even though debtor's failure to account for money he received while acting in a fiduciary capacity was through ignorance or negligence"); *In re Hatfield,* C–90–0477 MHP, 1991 WL 498925, at *3–4, 1991 U.S.Dist. LEXIS 7382, at *8, 9 (N.D.Cal.1991), *aff'd,* 976 F.2d 736 (9th Cir.1992) (quoting *In re Wolfington,* 47 B.R. 762, 764 (Bankr.E.D.Pa.1985)) (" 'Defalcation' is broadly defined to include 'the failure of a fiduciary to account for money he received in his fiduciary capacity' regardless of the fact that such failure may have resulted from ignorance or

negligence."); *In re Failing,* 124 B.R. 340, 344 (W.D.Okla.1989) (citing *In re Cowley,* 35 B.R. 526, 529 (Bankr.D.Kan.1983)) ("Defalcation may also result from the debtor's negligence or ignorance."); *Kwiat v. Doucette,* 81 B.R. 184, 190 (D.Mass.1987) (quoting *In re Gans,* 75 B.R. 474, 490 (Bankr.S.D.N.Y.1987)) ("Whereas fraud under the Bankruptcy Code 'refers to positive fraud, involving moral turpitude,' defalcation is broadly defined to include 'the failure of a fiduciary to account for money he received in his fiduciary capacity' regardless of the fact that such failure may have resulted from ignorance or negligence."); *In re Smith,* 72 B.R. 61, 63 (N.D.Iowa 1987) (citing *In re Cowley,* 35 B.R.

mere negligent breach of a fiduciary duty is *not* a "defalcation" under section 523(a)(11). "It is a well recognized principle in bankruptcy law that exceptions to discharge are strictly construed against the objecting creditor and in favor of the debtor. This is based on the strong policy of the Bankruptcy Code of providing a debtor with a 'fresh start.' " *In re Marvin*, 139 B.R. 202, 205 (Bankr. E.D.Wis.1992) (citing *Gleason v. Ihaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)). Given this well-recognized principle, and the split of authority concerning whether a "defalcation" may result from negligence, we cannot say that Congress intended for a debt arising from a mere negligent breach of fiduciary duty to be excepted from discharge under section 523(a)(11).

The FDIC's complaint does not use the magic words "willful" or "reckless." Nonetheless, we believe that it does allege more than a mere negligent breach of fiduciary duty. For instance, the complaint alleges that:

> Despite receiving repeated admonitions and warnings against such practices from federal and state banking authorities and other persons who reviewed the Bank's procedures, and in contravention of the Bank's own policies, defendants approved and disbursed loans without adequate underlying information, or supervised and thereby permitted the approval and disbursal of loans without adequate information about the borrower, guarantor and/or the potential collateral. In this manner, loans were approved and disbursed without the following:
>
> (i) completion of applications;
>
> (ii) receipt of financial statements or other required credit information;
>
> (iii) attempts to verify the accuracy of information submitted;
>
> (iv) undertaking or receiving the results of independent credit checks;
>
> (v) performance of independent appraisals or other means of confirming the alleged value of proffered collateral;

> (vi) ordering or receiving the results of title searches of assets to be pledged as collateral;
>
> (vii) maintaining current financial information; and
>
> (viii) making loans without adequate margin of security.

We must accept as true the FDIC's allegation that Rigdon was told before he undertook these actions that they were impermissible. Therefore, the FDIC's complaint does allege that Rigdon "knowingly" breached his fiduciary duty to the Bank. Since a knowing breach of fiduciary duty is more culpable than a mere negligent breach of duty, we conclude that the FDIC's complaint does allege a "defalcation" as that term is used in section 523(a)(11).

## Conclusion

The decision of the district court, affirming the bankruptcy court's disposition, is AFFIRMED.

---

526, 529 (Bankr.D.Kan.1983)) ("Defalcation includes a broad range of misfeasance: ... It is the slightest misconduct, and it may not involve misconduct at all. Negligence or ignorance may be defalcation...."). *But see, e.g., In re Martin*, 161 B.R. 672 (9th Cir. BAP 1993) ("Because a defalcation requires more than a mere failure to use ordinary care...."); *In re Reed*, 155 B.R. 169, 172 n. 5 (Bankr.S.D.Ohio 1993); *In re Stewart*, 123 B.R. 817, 819 (Bankr.W.D.Tenn.1991).

