In re James Douglas **TILLS**, Debtor.

**Elizabeth Mollasgo, Plaintiff,**

v.

**James Douglas Tills, Defendant.**

**Bankruptcy No. 08–13210–LT7.**
**Adversary No. 09–90054–LT.**

United States Bankruptcy Court,
S.D. California.

Nov. 5, 2009.

James Swiderski, La Jolla, CA, for Plaintiff.

James Douglas Tills, La Mesa, CA, pro se.

## AMENDED [1] MEMORANDUM DECISION

LAURA S. TAYLOR, Bankruptcy Judge.

Plaintiff Elizabeth Mollasgo ("Creditor") asserts pre-petition claims against Defendant James Tills ("Debtor," and together with Creditor, the "Parties") based on California securities law violations and common law fraud and negligent misrepresentation in connection with the sale of a security (collectively and as ultimately evidenced by the settlement agreement discussed below, the "Creditor's Claim"). In connection therewith, the Parties entered into a pre-petition Settlement Agreement and Mutual General Release (the "Settlement Agreement") that includes a recital providing that the Parties entered into the Settlement Agreement "[w]ithout conceding any fault or liability." Post-settlement and prior to any payment under the Settlement Agreement, Debtor initiated a chapter 7 bankruptcy (the "Debtor's Bankruptcy"). Creditor now asserts that Creditor's Claim is non-dischargeable in Debtor's Bankruptcy as a result of 11 U.S.C. § 523(a)(19)[2] and seeks summary judgment in her non-dischargeability action. Thus, the Court must determine whether summary judgment is appropriate in a case where a settlement agreement resolves allegations of security law violations, but also contains an express denial of any fault or liability by the Debtor.

1. The Memorandum Decision signed and entered on October 5, 2009 is hereby amended to correct a non-substantive typing error in the second sentence in section C.1.

2. Hereinafter references to code sections refer to Title 11 of the United States Code, also referred to as the "Bankruptcy Code" unless otherwise specified.

## FACTS[3]

Prior to his bankruptcy, Debtor and Richard A. Calderone began Jacoba Enterprises, LLC ("Jacoba"). Jacoba was an umbrella organization that purchased apartment buildings, converted them into condominiums, and formed a separate limited liability company in connection with each condo conversion project. Jacoba Taft, LLC ("Jacoba Taft") is the holder of the condo conversion project involved in this case.

In order to obtain a "partner" for a project, Jacoba, through Mr. Calderone, placed an ad in the San Diego Union Tribune seeking a serious LLC partner and requiring a $100,000.00 minimum investment in connection with the 38 unit condo conversion project. Creditor, individually or through her real estate agent daughter, responded to the ad. Creditor allegedly considered several Jacoba condo conversion projects, but ultimately invested in Jacoba Taft.

Unfortunately, Jacoba Taft was unsuccessful, and Creditor lost the investment. In May of 2008, Creditor initiated an arbitration proceeding against Debtor and claimed therein that Debtor violated California Corporations Code §§ 25501 and 25504 and committed fraud and made negligent misrepresentations in connection with her investment.

Immediately prior to the November 11, 2008 arbitration hearing, counsel for Creditor offered the Settlement Agreement to Debtor. The Settlement Agreement terms, in most relevant detail, are as follows:

1. Neither of the Parties admitted fault or liability;

2. Debtor agreed to pay Creditor $241,000 plus all of Creditor's arbitration and court expenses incurred to date in connection with the arbitration. This equated to full payment of amounts claimed as damages in the arbitration;

3. Creditor's counsel agreed not to undertake representation of other Jacoba investors;

4. Creditor agreed not to pursue any collection efforts against the separate property of Debtor's wife, with the exception of any community property if transferred to her as a means of hindering Creditor's collection efforts;

5. The Parties exchanged mutual releases; and

6. The Parties agreed that any disputes arising out of or relating to the Settlement Agreement would be resolved through arbitration.

It is not disputed that prior to signing the Settlement Agreement, Debtor informed Creditor that Debtor intended to file bankruptcy. Creditor's attorney does not argue that he discussed section 523(a)(19) in response, but Debtor concedes that the attorney made clear Creditor's intention to pursue Debtor notwithstanding a bankruptcy filing.

Debtor also stated at the summary judgment hearing that prior to signing the Settlement Agreement, he consulted an attorney who assured him that the Settlement Agreement would yield a dischargeable debt.

Debtor signed the Settlement Agreement on November 11, 2008. Creditor signed it on November 12, 2008.

Debtor made no payments to Creditor and on December 23, 2008, filed a volun-

---

**3.** The factual recitations set forth herein are based on the Declarations of Richard A Calderone, Elizabeth Mollasgo, and James Swid-

erski, and undisputed statements in other documents filed by the Parties and/or advanced at hearing.

tary chapter 7 petition. Creditor initiated this adversary proceeding against Debtor on February 5, 2009 and seeks a determination of non-dischargeability under section 523(a)(19).

Creditor now seeks summary judgment. Creditor argues that section 523(a)(19) requires that the Court find Creditor's Claim non-dischargeable as it arises from a settlement agreement that settled allegations of violations of securities laws and common law fraud and/or negligent misrepresentation in connection with the sale of a security (generally herein, "securities violations"). Creditor maintains that summary judgment is appropriate because no genuine issues of material fact exist.

Debtor insists that, notwithstanding the Settlement Agreement, section 523(a)(19) requires a factual finding that Debtor committed securities violations, that disputed material facts in this area exist, and therefore summary judgment is inappropriate. Debtor expressly denies that he committed securities violations and provides support for his alleged innocence in the form of the Calderone Declaration.

The Court allowed limited post-hearing briefing and the matter is now ready for decision.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334, 157(b)(1), and 157(b)(2)(I).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) (incorporated by Federal Rule of Bankruptcy Procedure 7056) provides that a party may move for summary judgment when there is no genuine issue as to a material fact and the moving party is entitled to a judgment as a matter of law. A "genuine issue" is one where, based on the evidence presented, a fair-minded jury could return a verdict in favor of the non-moving party on the issue in question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). A "material fact" is one for which the resolution could affect the outcome of the case. *Anthes v. Transworld Systems, Inc.*, 765 F.Supp. 162, 165 (D.Del.1991). All justifiable inferences must be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Likewise, all evidence must be viewed in the light most favorable to the non-moving party. *Lake Nacimiento Ranch Co. v. County of San Luis Obispo*, 841 F.2d 872, 875 (9th Cir. 1987).

## DISCUSSION

**A. The Settlement Agreement Is Valid Notwithstanding This Court's Determination As To The Applicability Of Section 523(a)(19).**

██ Whether Debtor can discharge Creditor's Claim depends first on the validity of the Settlement Agreement. This Court applies state law when resolving contract disputes. *In re Qintex Entertainment, Inc.*, 950 F.2d 1492, 1497 (9th Cir.1991).

██ A contract tainted by mistake is voidable by an innocent mistaken party. *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 425, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998). Here, Debtor argues that he would not have signed the Settlement Agreement but for his belief that bankruptcy would discharge his debt and that Creditor knew of Debtor's belief. Creditor clearly believes that the Settlement Agreement creates a non-dischargeable obligation under section 523(a)(19). Obviously, one of the Parties is mistaken as to the impact of bankruptcy law on the Creditor's Claim. The Court determines, how-

ever, that the Settlement Agreement is a valid contract that binds Debtor notwithstanding the Court's determination regarding the availability of discharge as a result of section 523(a)(19).

■ Here, Debtor clearly understood and appreciated the material terms of the Settlement Agreement—he knew he agreed to pay the Creditor's Claim and that he waived and released all defenses to payment of the same. Where a contracting party understands the material elements of a contract and is only mistaken about a collateral matter, the contract is not voidable. *See Bellwood Discount Corp. v. Empire Steel Bldgs. Co.*, 175 Cal. App.2d 432, 435, 346 P.2d 467 (1959).

■ In this case, non-dischargeability is not a material element of the Settlement Agreement terms, and, indeed, is not discussed therein. Instead, it may be a collateral consequence of Debtor's Bankruptcy. Thus, even if the Parties entered into the Settlement Agreement based on a misunderstanding regarding the implications of section 523(a)(19), the Settlement Agreement remains valid, and the Parties remain bound by its terms.

**B. The Settlement Agreement Fully And Finally Liquidates The Creditor's Claim.**

■ There is also no question that the Settlement Agreement created a payment obligation, Creditor's Claim, that must be paid in full to the extent estate assets are sufficient to do so. The Court must interpret the Settlement Agreement to give effect to the Parties' mutual intent. *See* Cal.Civ.Code § 1636. To do so, the Court, first and foremost, looks to the language of the Settlement Agreement. *See* Cal.Civ. Code § 1639. Here it is clear to the Court that the Parties completely and finally expressed their intentions in the Settlement Agreement and that the Settlement Agree-

ment is an integrated contract. *See Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1064 (9th Cir.2002). As a result, the Court would consider extrinsic evidence only to interpret existing terms that are "ambiguous." *Id.* A resort to extrinsic evidence is unnecessary in this case.

At the outset, paragraph 2 of the Settlement Agreement recitals provides that neither of the Parties concedes "any fault or liability." The title, "Settlement Agreement and Mutual General Release," signals finality. The release provides that it is "mutual" and "general," precludes any further action on the underlying claims by either of the Parties, and extends to all possible issues, claims, and defenses notwithstanding the discovery of new facts as it contains a standard California Civil Code section 1542 waiver.

The Court finds that the Settlement Agreement fully and finally resolves all disputes as to the Debtor's monetary liability, fully liquidates the Creditor's Claim, and is effective to prohibit any further litigation as to the amount of Creditor's Claim even in a bankruptcy context. As a result, Debtor cannot assert any defense to the payment of Creditor's Claim from the assets of his chapter 7 estate (the "Estate"). Unfortunately, however, this provides no comfort to Creditor. Debtor claims the loss of significant assets prior to bankruptcy, and, consistent with this assertion, his schedules evidence that the Estate has no ability to pay the Creditor's Claim. Thus, Creditor's only possible avenue for recovery is through post-bankruptcy pursuit of the Debtor; and such pursuit is possible only if the Creditor's Claim is not dischargeable in Debtor's Bankruptcy.

**C. Section 523(a)(19) Analysis.**

Creditor asserts that the determinations discussed above lead inexorably to a con-

clusion that the Creditor's Claim is non-dischargeable. As noted, the Debtor argues to the contrary. In order to resolve this dispute, the Court reviews section 523(a)(19).

### 1. The Plain Language Of Section 523(a)(19) Requires That The Non–Dischargeable Debt Result From Securities Violations.

■ To discern the requirements of section 523(a)(19), this Court begins its inquiry with the statutory language itself. *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Id.* (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)).

Section 523 lists debts that are not dischargeable and at (a)(19) provides that a debt is not discharged if it:

(A) is for—

(i) the violation of any of the Federal securities laws ..., any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from

(ii) any settlement agreement entered into by the debtor....

11 U.S.C. § 523(a)(19).

■ Section 523(a)(19) has two separate conditions for non-dischargeability separated by a semicolon and the word "and." The statute, thus, plainly indicates that the conditions must be independently satisfied-securities violations must have occurred **and** a settlement (or other final resolution of the claim) must be completed. *Peterman v. Whitcomb (In re Whitcomb)*, 303 B.R. 806, 810 (Bankr.N.D.Ill.2004) (debt dischargeable under section 523(a)(19) if two conditions met.)

■ This interpretation also is consistent with the canon of statutory construction requiring that the Court must give meaning to each word and must assume that Congress does not include any word unnecessarily. *Montclair v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883). The word "violation" is rendered meaningless if a settlement based on mere allegations of securities violations is non-dischargeable without any consideration of culpability.

Additionally, the text associated with section 523(a)(19) in the Corporate and Criminal Fraud Accountability Act of 2002 (the "Act") supports the interpretation that requires an actual securities violation in addition to the settlement of securities violation allegations. The Act targets fraudulent actors and the title of section 803 of the Act, which amended section 523(a) to include subsection (19) reads: "Debts Nondischargeable If Incurred In **Violation** Of Securities Fraud Laws." 107 Pub.L. 204, 116 Stat. 745, 801, 802 (2002) (emphasis added). Thus, the exception to discharge focuses on securities violations rather than resolutions of allegations of securities violations.

### 2. A Review Of Committee Reports Indicates That Congress Intended Section 523(a)(19) To Require Culpability Of The Debtor.

■ When statutory language is plain, the Court may still look to legislative history to ensure that the result of the

Court's interpretation comports with the statutory purpose. *Carpenters Health & Welfare Trust Funds v. Robertson (In re Rufener Constr.)*, 53 F.3d 1064, 1067 n. 7 (9th Cir.1995). The Court largely limits its legislative history query to official committee reports. *In re Kelly*, 841 F.2d 908, 912 n. 3 (9th Cir.1988) (*citing Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984)). The Senate committee report for the Act (the "Report") stated that section 523(a)(19): "... would ... make judgments and settlements arising from state and federal securities law *violations* brought by state and federal regulators and private individuals non-dischargeable. Current bankruptcy law may permit *wrongdoers* to discharge their obligations under court judgments or settlements based on securities *fraud* and securities law *violations.*" S. Rep. 107–146 (2002) (emphasis added). The Report speaks of debts arising from "violations" and aims at eliminating loopholes in bankruptcy law that permit "wrongdoers" to discharge debts. The Report focuses on resolved securities violations, rather than on settled claims of securities violations.

▮ The section by section analysis and discussion of the Act submitted by Senator Patrick Leahy, author of the Act, provides that section 523(a)(19) would "prevent wrongdoers from using the bankruptcy laws as a shield and [would] allow defrauded investors to recover as much as possible.... The provision applies to all judgments and settlements arising from state and federal securities laws violations...." 148 Cong Rec S 7418 at 7418 (2002). This discussion and analysis are in concert with the Report's focus on culpable debtors and wronged creditors. Defrauded investors can avoid losses through section 523(a)(19). *Id.* at 7419. The Report and the Act's author thus support the conclusion that section 523(a)(19) is intended to target securities laws violators, not to generally penalize all debtors who settle allegations of securities violations.

3. **In Appropriate Cases The Terms Of A Settlement Agreement May Allow The Court To Assume That A Securities Violation Actually Occurred And That Section 523(a)(19) Is Satisfied.**

▮ Section 523(a)(19) allows a court in appropriate circumstances to base a finding of securities violations on the debtor's entry into a settlement agreement. What is at issue here is whether the Court is required to do so in all cases.

A 2007 article provides context for this discussion as it outlines drafting tips designed to render a claim under a prepetition securities fraud settlement agreement non-dischargeable under section 523(a)(19). *See* Menton, James P., Jr., *Sarbanes–Oxley and the New Nondischargeable Debt: Drafting Tips for Pre–Bankruptcy Settlements*, 8 Comm. & Bus. Lit. 9 (2007). The author suggests that such a settlement agreement identify securities fraud claims, provide factual foundation supporting the claims, specifically indicate that settlement agreement payments resolve losses from securities fraud, and contain agreements that the debt is nondischargeable and that the settlement agreement satisfies the requirements of section 523(a)(19). *Id.* While such careful drafting seemingly assures the desired non-dischargeability finding, the Court stops short of finding that all or any of these provisions are required. Indeed, a settlement agreement that settles allegations of securities violations and is silent as to fault may be sufficient. But in this case, the Settlement Agreement contains no discussion of the basis for non-dischargeability and, instead, contains a provision expressly stating that fault and lia-

bility are not conceded. The Court thus finds that the Settlement Agreement does not independently establish that Debtor committed securities violations and does not independently satisfy section 523(a)(19)(A).

Clearly, Congress provided that settlement agreements can independently satisfy section 523(a)(19). But it is also clear that Congress required that the settling party be a wrongdoer. Here, Creditor drafted the Settlement Agreement and obtained an agreement to pay the Creditor's Claim in full. But Creditor also made a concession to obtain this agreement—and took a risk in connection therewith—as she did not obtain any agreement regarding fault or non-dischargeability and allowed the Debtor to maintain his position that he had not committed a securities violation as required section 523(a)(19). She, thus, obtained an agreement that cannot form the sole basis for a determination that Debtor committed securities violations.

### 4. Section 523(a)(19)(B) Expands The Use of Collateral Estoppel To Resolution of Securities Violations Through Settlement, But Not Under The Narrow Circumstances Of This Case.

█ As discussed above, legislative history contains comments from Senator Leahy making clear a Congressional intent that section 523(a)(19) give settlement agreements a collateral estoppel effect similar to judgments. Creditor, thus, argues that Congress intended to preclude debtors from contesting liability if they settled claims of securities violations notwithstanding language in any such agreement indicating that fault and/or liability are not conceded. The Court, however, finds no evidence in the legislative history indicating that Congress intended such a broad result and such a drastic alteration of the doctrine of collateral estoppel.

█ Typically, five threshold requirements must be satisfied before courts apply issue preclusion. *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824 (9th Cir. BAP 2006). The issue as to which preclusion is sought must have been resolved through a prior determination that: (1) resolved an identical issue; (2) actually litigated the identical issue; (3) necessarily decided the identical issue; (4) is final and resolved the issue on its merits; and (5) occurred between parties in privity to one another, in the former proceeding. *Id.* Additionally, the Court must consider whether preclusion would be fair and consistent with public policy in light of the circumstances of each case. *Id.* at 824–825. In section 523(a)(19), Congress clearly intended to alter the "actually litigated" requirement so that a settlement agreement has a preclusive effect not otherwise available. There is, however, ample evidence that Congress did not abrogate the requirement that the issue necessarily be decided and that violation be established.

A settlement agreement is fully capable of necessarily deciding an issue; as the article cited above notes, a settlement agreement can include an express agreement as to both fault and liability. Even if a settlement agreement is silent as to fault and liability, an argument could be made that the issues were necessarily decided based on the facts surrounding the settlement process. But here, no such argument is available as the Settlement Agreement expressly provides that fault and liability are not conceded. There is absolutely no basis for applying principals of issue preclusion where the issue is expressly not resolved by the settlement agreement in question.

Further, as noted above, a court considering issue preclusion must also consider

the broad implications of public policy prior to applying the doctrine. Here public policy weighs against Creditor. First, there is a strong public policy in favor of settlement. *See e.g. Delta Air Lines, Inc. v. August*, 450 U.S. 346, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981); *see also Evans v. Jeff D.*, 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986). Creditor takes the position that as a result of 523(a)(19) all securities litigation settlements are non-dischargeable, which this Court believes would result in discouragement of settlement agreements. This strident position is irresponsible. If Congress wished to deviate so completely from the public policy favoring settlements it easily could have done so. Instead of referencing a "violation" of securities law, Congress could have required non-dischargeability as to any settlement arising from a complaint alleging such violations. Given the strong public policy in favor of settlements, it is reasonable to assume that Congress would be completely clear if it intended to render it impossible to settle without resultant non-dischargeability. Thus, the Court concludes that Congress provided plaintiffs with a valuable tool in securities litigation, but also allowed the parties to avoid de facto non-dischargeability through settlement agreement language that expressly avoids any concession of fault or liability.

Such a view is also consistent with Supreme Court authority generally allowing a court to "look behind" a settlement agreement in non-dischargeability proceedings. In *Archer v. Warner*, 538 U.S.

314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003)[4], the Supreme Court held that a settlement agreement settling a creditor's claims against a debtor does not bar the creditor from raising those claims for purposes of section 523. Prior to *Archer*, the Supreme Court had cautioned that "res judicata shields the fraud and the cheat as well as the honest person. It, therefore, is to be invoked only after careful inquiry." *Brown v. Felsen*, 442 U.S. 127, 132, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Following *Brown*, the Supreme Court, thus, determined that a settlement agreement should not be available as a shield if it arises from an otherwise non-dischargeable debt. *Archer*, 538 U.S. at 323, 123 S.Ct. 1462. The *Archer* analysis similarly suggests that a settlement agreement should not be used as a cudgel to force a determination of non-dischargeability as to an allegedly innocent debtor unless Congress expressly so states or the settlement agreement so provides.

The strong bankruptcy policy in favor of the debtor's fresh start underscores the appropriateness of this determination. *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). As a result of this policy, creditors carry the burden of proving that a section 523 exception to discharge applies. *Id.* at 291, 111 S.Ct. 654. Here Creditor urges the Court to ignore the burden she bears, Debtor's argument that he is an honest but unfortunate debtor entitled to the fresh start that is a central purpose of the Bank-

---

**4.** Congress is presumed to be aware of relevant case law and "if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific". *Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). Although the original date of enactment for section 523(a)(19) predated *Archer*, Congress has since amended the statute and,

in light of *Archer*, did not amend section 523(a)(19)(A) to include language that would cover unproved and denied claims of violations of securities laws and common law fraud, deceit, or manipulation in connection with the purchase or sale of any security. Therefore, *Archer* is particularly relevant to this Court's interpretation of Congress' intent and the effect of the statutory language.

ruptcy Code, and a defense to non-dischargeability that Debtor implicitly reserved in the Settlement Agreement. Creditor could have bargained for language that satisfied her burden and waived Debtor's right to argue that he did not commit securities violations. In enacting section 523(a)(19), Congress clearly intended to preclude re-litigation of stipulated facts establishing a prima facie case for securities violations or relitigation of admitted securities violations in settlement agreements. There is no evidence, however, that Congress intended to preclude litigation over securities violations where the Debtor bargained for and obtained the right to contest fault in the very settlement agreement at issue.

**5. Section 523(a)(11) Compels The Court To Read Section 523(a)(19) To Require Actual Securities Violations.**

 When interpreting a statute, the Court will not look solely at the provision, but to other provisions of the same code to maintain internal harmony among related provisions. *See Perlman v. Catapult Entertainment (In re Catapult Entertainment),* 165 F.3d 747, 751 (9th Cir.1999). Analysis of section 523(a)(11) offers interpretive insight when analyzing section 523(a)(19) and contrary to the argument of Creditor supports the position advanced by Debtor in this case.

Section 523(a)(11) provides in pertinent part that "[a debt] provided in any final judgment, unreviewable order, or consent order ... or contained in any settlement agreement entered into by the debtor, arising from any act of fraud or defalcation while acting in a fiduciary capacity ... with respect to any depository institution or insured credit union" is non-dischargeable. Subsections 523(a)(11) and (4) apply to the same debts to the extent the credi-

tor is a depository institution or insured credit union, except that section 523(a)(11) allows non-dischargeability of a debt not previously liquidated through a judgment. *Meyer v. Rigdon,* 36 F.3d 1375, 1379 (7th Cir.1994).

In *Meyer,* the Seventh Circuit interpreted section 523(a)(11) to extend the collateral estoppel doctrine to preclude re-litigation of issues after default judgments, settlement agreements, and administrative agency decisions. *Id.* at 1380. It noted further that section 523(a)(11) alters collateral estoppel doctrine by giving preclusive effect to decisions and agreements not "actually litigated." *Id.* at 1379. The court adopted this interpretation to avoid rendering the added language in section 523(a)(11) meaningless and the section completely duplicative of section 523(a)(4). *Id.* at 1381.

Because section 523(a)(11) extends preclusive effect to settlement agreement determinations, cases involving section 523(a)(11) and settlement agreements offer insight into the proper analysis of section 523(a)(19). *See Commissioner v. Keystone Consol. Indust.,* 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993) ("identical words used in different parts of the same act are intended to have the same meaning") (*quoting Atlantic Cleaners & Dyers v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932)). Creditor insists that the *Meyer* decision requires that this Court preclude Debtor from litigating securities violations claims in a non-dischargeability context. The Court agrees that subsections 523(a)(11) and (19) expand the Court's ability to utilize issue preclusion, but concludes that this expansion is not as broad as Plaintiff suggests.

In considering the appropriateness of collateral estoppel this Court applies California law. *Gayden v. Nourbakhsh (In re Nourbakhsh),* 67 F.3d 798, 800 (9th Cir.

1995); *Lee v. TCAST Communications, Inc. (In re Lee)*, 335 B.R. 130, 136 (9th Cir. BAP 2005). As discussed above, California law extends preclusive effect only to issues "necessarily decided" and "actually litigated" in a former proceeding. *Khaligh*, 338 B.R. at 824. The *Meyer* court held that Congress intended to extend preclusive effect to proceedings that did not "actually litigate" issues. In fact, in a hypothetical provided by the *Meyer* court, it stated, "[b]efore Congress enacted section 523(a)(11), a bank officer could enter into a private settlement agreement …, admit that he had committed acts of fraud, and still have the debt arising from his fraud discharged in bankruptcy." *Meyer*, 36 F.3d at 1380. Thus, the *Meyer* court contemplated a scenario where either a Debtor admitted to fault or a settlement agreement conceded fault. *Id.* Notwithstanding, the *Meyer* court, in the default judgment context, looked behind the default judgment to the text of the complaint to determine whether the findings required for non-dischargeability were sufficiently pled to have been necessarily decided for application of cash estoppel. *Id.* at 1385.

If one analogizes section 523(a)(19) to 523(a)(11) as interpreted by the *Meyer* court, one must conclude that while Congress intended to extend issue preclusion to cover settlement agreements for purposes of section 523(a)(19), it does not follow that Congress intended settlement agreements to have preclusive effect on issues not "necessarily decided." And, again, the Settlement Agreement here did not necessarily decide securities violations issues—it expressly provides that these issues were not conceded and therefore not determined. Thus, to the extent case law under section 523(a)(11) and cited by Creditor is relevant, it supports a denial of issue preclusion in this case.

## 6. A Review Of Case Law Identifies No Case Supportive Of Creditor's Position.

The Creditor supplies no case law finding a debt non-dischargeable under section 523(a)(19) where the underlying settlement agreement contained an express statement that fault and liability were not conceded. The case on which Creditor relies most strongly is the *Whitcomb* case. *Whitcomb*, however, is clearly distinguishable from the case at hand. First, *Whitcomb* involves a plaintiff's unopposed motion for judgment on the pleadings in a section 523(a)(19) action. *Whitcomb*, 303 B.R. at 809–10. The lack of opposition allowed the Court considerable latitude in regards to the plaintiff's liability allegations. Having said this, however, the *Whitcomb* court carefully discussed the **two** requirements of section 523(a)(19) liability in reaching its determination. *Id.* at 810. While the record is not detailed and it does not appear that the *Whitcomb* settlement agreement contained detailed admissions, the *Whitcomb* court found that: "the agreed judgment order provided that the Debtor agreed that he damaged the Petermans." *Id.* at 808. In this case the Debtor has admitted neither fault nor liability. And unlike the *Whitcomb* defendant, the Debtor expressly reserved his right to assert innocence through Settlement Agreement language providing that entry into the settlement was **not** to be read as conceding fault or liability.

Similarly, in *Hodges v. Buzzeo (In re Buzzeo)*, 365 B.R. 578 (Bankr.W.D.Pa. 2007), the court found a claim non-dischargeable under section 523(a)(19) where it was based on a settlement agreement arising from allegations of securities violations and where the plaintiff did not admit the allegations of Count I (fraud in connection with the sale of securities) but did agree that the debt would be non-dis-

chargeable under section 523(a)(2) and that: "... in any subsequent proceeding to which the [plaintiffs] and Buzzeo are parties, all of their allegations set forth in Count I may be taken as true and correct ... [and that] the stipulated judgment will collaterally estop [*Buzzeo*] ..." 365 B.R. at 580–581. Here, Debtor has not agreed to non-dischargeability.

In short, the Creditor seeks to extend the reach of section 523(a)(19) in a manner not endorsed by any previous judicial decision. The absence of supporting case law is not dispositive, but it is strongly supportive of this Court's determinations herein.

## CONCLUSION

Congress intended section 523(a)(19) to limit the opportunities for those violating securities laws to escape the consequences of their malfeasance. Where such a violation occurs, the debt is non-dischargeable notwithstanding its liquidation through litigation, arbitration, or settlement. Having said this, however, non-dischargeability is still reserved for those who, in fact, have violated securities laws. A material issue of fact exists in this case as to that first critical element of section 523(a)(19). The Settlement Agreement expressly states that the Debtor settled without acknowledging any fault or liability. The Settlement Agreement contains not a single concession or factual recitation whereby the Debtor concedes any fault or damages. The Debtor, while not providing an alternative theory for entry into the Settlement Agreement except through argument, provided the Declaration of Mr. Calderone and ardently argued his innocence. The Court finds that the ambiguity in the Settlement Agreement on this point coupled with the Calderone declaration are sufficient to create a triable issue of material fact as to whether securities violations ex-

ist in this case. Thus, Creditor's motion for summary judgment is DENIED.