In re James A. and Alice F. KUSMIEREK, Debtors.

Karen M. KRESS, Personal Representative of the Estate of Freda S. Kusmierek, Deceased, Plaintiff,

v.

James A. KUSMIEREK, Defendant.

Bankruptcy No. 97 B 01200.
Adversary No. 97 A 00576.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division

Sept. 23, 1998.

Pamela S. Hollis, Linda M. Kujaca, John J. Lanigan of Hollis & Johnson, Chicago, IL, for Plaintiff.

James McArdle of Law Offices of Peter Francis Geraci, Chicago, IL, for Defendant.

## *MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to the bankruptcy case filed by James and Alice Kusmierek ("Debtors") under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on January 15, 1997. The Adversary was filed on April 24, 1997, by Debtor's sister Karen Kress, as personal representative of the estate of Debtor's mother Freda Kusmierek. Plaintiff seeks judgment against James Kusmierek, finding nondischargeable in Count I under 11 U.S.C. § 525(a)(4) the debt adjudicated in a Pennsylvania probate court to be due from him to the estate of Freda Kusmierek.[1] Plaintiff moved here for summary judgment. For reasons stated below, Plaintiff's motion is allowed and judg-

ment will separately be entered providing that debt found due by the Pennsylvania court from James Kusmierek to the Estate of Freda Kusmierek is nondischargeable.

### *Introduction*

Freda S. Kusmierek died on July 23, 1995. The decedent's son, James A. Kusmierek, was issued letters in a Pennsylvania court as executor ("personal representative") of her estate on August 7, 1995, but in June 1996 James Kusmierek resigned as executor, and Karen Kress was appointed personal representative of the estate in his place. On October 7, 1997, Karen Kress filed a First and Final Account claiming that James owed the estate a debt, to which James Kusmierek took exception on November 4, 1997. An Auditor was assigned by the Pennsylvania court to hear and determine the issues.

An evidentiary hearing was held by the Auditor, at the conclusion of which the Auditor found that James owed the probate estate $20,324.38 due to excessive distributions to himself from the estate assets while he was executor. The Auditor's report was confirmed by a judge of that court, thus adjudicating the debt finally under Pennsylvania law. Karen Kress as personal representative seeks to have that debt held nondischargeable.

### *Undisputed Facts*

The following undisputed facts emerge from the pleadings and summary judgment filings of the parties under Local Bankruptcy Rule 402.M and N ("402.M/402N"):

1. On January 15, 1997, James A. Kusmierek and Alice F. Kusmierek filed a voluntary joint Chapter 7 Bankruptcy petition. 402.M/402.N, ¶ 1.

2. Freda S. Kusmierek, mother of James Kusmierek and Karen Kress, died on July 23, 1995. James Kusmierek was appointed personal representative of her estate by the Orphan's Court Division of the Court of Common Pleas of Armstrong County, Pennsylvania (the "Probate Court"). 402.M/402.N, ¶ 2.

---

1. The case was filed in two counts. Count II lay only against Alice Kuzmierek, but was dismissed on Plaintiff's motion May 27, 1998, leaving only Count I pending.

3. During the time he was personal representative of his mother's estate, James wrote himself checks from the estate checking account in the total amount of $57,500. 402.M/402.N, ¶ 3.

4. These checks were written without authorization from the Probate Court or authorization from the donees of the Estate of Freda S. Kusmierek. 402.M/402.N, ¶ 4.

5. On or about June 27, 1996, James Kusmierek resigned as personal representative of his mother's estate. 402.M/402.N, ¶ 5.

6. On or about July 12, 1996, Karen Kress was appointed personal representative of the estate. 402.M/402.N, ¶ 6.

7. On or about October 7, 1997, Karen Kress filed a First and Final Account of the her mother's probate estate. 402.M/402.N, ¶ 7.

8. On or about November 4, 1997, James Kusmierek took exception to the First and Final Account. As a result, the Probate Court subsequently appointed an Auditor. 402.M/402.N, ¶ 8.

9. On or about April 7, 1998, Chase G. McClister, Auditor for the probate estate, issued his Auditor's Report setting forth the amounts he found due to the probate estate from James Kusmierek. 402.M/402.N, ¶ 9.

10. In the Auditor's Report, McClister found that James Kusmierek had received $57,890 as advance distributions from the probate estate. 402.M/402.N, ¶ 10. He also found that James falsely told his siblings that he had retained an attorney for probate services, and that he failed to document his activities as executor despite requests for him to do so.

11. In the Auditor's Report, McClister computed James Kusmierek's final liability to the probate estate after all credits due him to be $20,324.38. 402.M/402.N, ¶ 11.

12. On or about May 6, 1998, an Order was entered by a judge of the Probate Court confirming the Auditor's Report. No exceptions to the Auditor's Report were filed. Ex. E, 402.N(3)(b). On May 15, 1998, the Auditor was released and discharged. 402.M/402.N, ¶ 12.

13. As of May 20, Karen Kress, in her capacity as personal representative of the probate estate, has expended or become liable for $14,664.24 in legal fees to the firm of Hollis and Johnson in her pursuit of this Adversary action. Of this amount, $613.79 was charged to James Kusmierek in the Auditor's Report, leaving $14,050.45 outstanding. 402.M/402.N, ¶ 13.

14. Other facts set forth in the following discussion will stand as additional undisputed facts.

### James Collaterally Estopped from Raising Additional Fact Issues

■ James Kusmierek seeks to assert additional facts concerning issues which were already determined through trial by the Pennsylvania probate court. He repeats his contentions made there that certain property present on estate property when James took inventory of all estate items was claimed by James' brother and sister as inter vivos gifts, although James' siblings were unable to produce documentation of this. James claims that he took only those advances that he thought were his share and never intended to deplete the estate. Rather, he argues that depletion of the estate was actually caused by Kress in her role as personal representative of the estate.

However, James is collaterally estopped from making such arguments as all of his contentions were fully adjudicated before the Auditor of the probate estate and by order of the probate court. James is entirely estopped from making these arguments:

> Collateral estoppel (also called "issue preclusion") refers to the simple principal that "later courts should honor the first actual decision of a matter that has been actually litigated." It ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."

*Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 530 (7th Cir.1997) (internal citations omitted). There are four necessary elements to collat-

eral estoppel: (1) the issue for which preclusion is sought is the same as that involved in the prior litigation; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Id.*

The issues that James sought to raise in this Adversary are the same as those he raised in the probate hearing. Compare Defendant's 402.N Statement to Plaintiff's ex. B, Transcript of Auditor's Hearing. The Auditor made specific findings as to those very issues that James raises attempts to raise again here. Specifically, the Auditor found that certain items had been given to Freda's children as inter vivos gifts, and James failed to turn over certain documentation to Karen when he resigned as executor, thus requiring her to incur expenses to replicate the missing documents. Those matters and related expenses incurred by the probate estate were among the issues actually litigated, as to which determination was necessary for the final outcome of the probate hearing. Although James sought to do his own questioning during the Auditor's Hearing, he was represented and assisted by an attorney, Cathleen Feder Perr.

The Auditor's hearing and ruling was within a court of competent jurisdiction. By statute, the Pennsylvania Orphans' Court may appoint Auditors to examine and audit an account and to determine distribution. 20 Pa.C.S.A. § 751. The Auditor submits findings of fact which are approved by the Orphans' Court. Pa. O.C. Rules 8.7. Once such findings are approved by the Orphan's Court they are entitled to as much weight as judgment or a jury verdict and will not be set aside without a showing of manifest error. *In re Krepinevich's Estate,* 433 Pa. 78, 82, 248 A.2d 844, 845 (1969) (citing *In re Istocin's Estate,* 126 Pa.Super. 158, 161, 190 A. 382 (1937)). In this case, the Auditor submitted his report to the Orphans' Court, and the Orphans' Court confirmed the Auditor's report on May 7, 1998. The parties do not report that any appeal was taken from that judgment which as a result is now final.

Thus, James is collaterally estopped from arguing that the amount owed to the probate estate is incorrect, or that gifts his siblings received were not inter vivos gifts from their mother, or that he is entitled to additional credits.

In addition, James argues that all his disbursements were authorized by Karen Kress, who authorized each offer he contacted her by phone message, mail or fax. 402.N ¶ 5. Karen Kress denies such contacts. 402.-N(3)(b) ¶ 5. Moreover, James failed to produce here any copies of the facsimile transmissions or letters allegedly sent. While these issues could have been raised as part of the dispute in the Pennsylvania court, they were evidently not raised there. If not raised there to block the adverse judgment, they certainly cannot be raised here to attack that judgment entered on a record wherein findings supporting judgment and the dollar adjudication collaterally estop the debtor-defendant.

### Jurisdiction

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### Discussion

██ Because the policy behind the Bankruptcy Code is to provide a debtor with a fresh start, there is a presumption that a debt is dischargeable. *See In re Pawlinski,* 170 B.R. 380, 388 (Bankr.N.D.Ill.1994) (citing *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985)). The party seeking to establish an exception to discharge bears the burden of proof. *In re Martin,* 698 F.2d 883, 887 (7th Cir.1983). The burden of proof is by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991).

██ Section 523(a)(4) provides that a discharge "does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity...." 11 U.S.C. § 523(a)(4). A primary element of this section is that a fiduciary

relationship exist. Although the term fiduciary for purposes of § 523(a)(4) is not as broad as that under state law (*Matter of Woldman*, 92 F.3d 546, 547 (7th Cir.1996)), it does include an executor or executrix of a state court probate estate. *In re Reed*, 155 B.R. 169, 172 (Bankr.S.D.Ohio 1993); *In re Kleppinger*, 27 B.R. 530, 531 (Bankr.M.D.Pa. 1982).

■ The Seventh Circuit has found that there is a distinction between a trust or other fiduciary relationship that has "an existence independent of the debtor's wrong" and a trust or other fiduciary relation that has no existence before the wrong is committed. A lawyer's fiduciary duty to his client, or a director's duty to his corporation's shareholders, or an estate executor's duty to the estate pre-exists any breach of that duty; while in the case of a constructive trust there is no fiduciary duty until a wrong is committed. *In re Marchiando*, 13 F.3d 1111, 1115–16 (7th Cir.), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). Here, James Kusmierek as executor had a fiduciary relationship to his mother's estate long before he made distributions to himself. He was therefore a fiduciary within the meaning of § 525(a)(4).

■ The remaining question is whether James' actions constituted defalcation under federal law. Under § 523(a)(4), defalcation is a failure to account for money or property that has been entrusted to another. *Pawlinski*, 170 B.R. at 389. An objective standard is used to determine defalcation; no intent or bad faith is required. *Id.* Judge Learned Hand in the oft-cited case of *Central Hanover Bank & Trust Co. v. Herbst* suggested defalcation may even include "innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts." 93 F.2d 510, 511 (2nd Cir.1937) (defining defalcation under substantially similar section in Bankruptcy Act). Judge Hand further held that, "when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time that it may, he is guilty of a 'defalcation' though it may not be a 'fraud' or an 'embezzlement,' or perhaps not even a 'misappropriation.'" *Id.* at 512.

Such is the case here. James made certain distributions to himself. Even if he had conditional authority to make those distributions, he was aware that some resulting adjustment might be made to reduce his distributive share, or that he might have to return to the probate estate some or even all of what he received. His failure to do so constituted defalcation, and the Auditor's Report found how much he owed.

Defalcation refers to a failure to produce funds entrusted to a fiduciary and applies to conduct that does not necessarily reach the level of fraud, embezzlement or misappropriation. Since debts arising from breaches of ordinary care are normally dischargeable in bankruptcy, and exceptions to discharge are strictly construed in favor of the debtor, some degree of culpability is required to make a debt nondischargeable as a defalcation under section 523(a)(4). However, when a debtor has been acting as a trustee or other fiduciary, the debtor is responsible for knowledge of the fiduciary responsibilities and may not cite mere ignorance as a defense to an objection to dischargeability asserted under section 523(a)(4).

3 Collier's on Bankruptcy ¶ 523.10[1][b].

■ A panel of the Court of Appeals in this Circuit has discussed what comprises defalcation in the context of § 523(a)(11) (defalcations of fiduciary duty with respect to depository institutions) and indicated that defalcation requires some type of misconduct. *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994). Although *Meyer* cites to *Herbst* as the leading authority on defalcation, *id.* at 1382–83, it held that mere negligent breach of a fiduciary duty did not constitute defalcation under § 523(a)(11). *Id.* at 1384. While it did not state what level of misconduct would constitute defalcation, it set forth that defalcation covered more than negligence. *Id.* at 1382 (citing *Herbst*, 93 F.2d at 511). Further the opinion stated that Congress intended to give the term a consistent meaning throughout the Bankruptcy Code, inferring that its holding was intended to apply to § 523(a)(4) as well as § 523(a)(11). *Id.* We may certainly reason from this that defalcation under § 523(a)(4) requires a showing of

misconduct. Mere negligence is insufficient, but fraud is not required.

James argues here that, because he was merely negligent, he cannot have committed defalcation under § 523(a)(4). However, his behavior was more than merely negligent; it constituted defalcation which went beyond merely making excess distributions to himself through weakness. As found by the Auditor, James affirmatively lied to his siblings when he informed them that he had retained a Mr. David Suckling as attorney for the estate. Actually, no attorney was retained for the probate estate until after Karen Kress became administratrix. Moreover, James failed to file documents to account for his activities and failed to pay estate taxes. His misrepresentations and surreptitiousness demonstrate misconduct that raises the improper takings to the level of defalcation.[2]

In short, while he was administrator of his mother's estate, James made substantial distributions to himself without any regard as to the amount to which he was entitled, and thus committed defalcation while acting in a fiduciary capacity.

Other bankruptcy court opinions have held an estate administrator who fails to give estate beneficiaries their fair share of a probate estate has committed defalcation while acting as a fiduciary within the meaning of § 523(a)(4) so as to bar dischargeability. *In re Kondora*, 194 B.R. 202, 208 (Bankr. N.D.Iowa 1996) (finding debtor committed defalcation when failed to list half-siblings as siblings and failed to distribute their portion of the estate); *In re Wilson*, 127 B.R. 440, (Bankr.E.D.Mo.1991) (finding debtor committed defalcation when debtor made unauthorized withdrawals from grandmother's estate to save grandmother's business).

Bankruptcy is both a creditor's remedy and a debtor's right. The discharge of the bankrupt's debt is an essential feature of the second function; it is what enables the bankrupt to get a "fresh start." It is also, depending on the bankrupt's future income prospects, a potentially great harm to creditors. When the bankrupt is a trustee and the creditor a beneficiary of the trust, the balance has been deemed to incline against discharge. Nondischarge becomes another token of the law's imposition of the highest standard of loyalty and care on trustees. In a trust relationship the settlor and. beneficiary repose "trust" in a literal sense in the trustee, and the abuse of that trust is considered a serious wrong. *Matter of Marchiando*, 13 F.3d 1111, 1115 (7th Cir.1994), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994).

### Attorney's Fees

Plaintiff also asks the court to find nondischargeable $14,050.45 in attorneys' fees and costs she claims to have incurred in prosecuting this Adversary action. Plaintiff argues that it was the intent of the Auditor that James be responsible for attorneys' fees incurred by the attorneys for the estate. Plaintiff points out that the auditor stated:

> It must be noted that at this time the legal fees and costs payable to the law firm of Calarie and Owen resulting from this audit are not known to the auditor. The calculations in this report do not take into consideration those fees and costs, but when those fees and costs are known they must be paid by the estate and included as disbursements.

Auditor's Report, Ex. C, p. 8. However, those remarks only went to additional attorneys' fees incurred during the audit and did not appear to cover attorneys' fees or expenses pursuing estate causes of action in other forums. The auditor did find that the additional audit attorneys' fees would be included

---

**2.** Further, James had initially valued certain alleged assets of the estate as having little or no value. Tools and equipment were originally valued at approximately $2,000. By the time of the Auditor's Hearing, however, James valued the same tools and equipment at $20,000. James also valued items that, although mentioned in his mother's will, were never located. It seems as if, subsequent to James' substantial distributions to himself which exceeded his rightful share of the estate, James changed his estimate of value. As a result of these asserted changes, James sought to increase the value of both the total estate and his share so as to increase the latter to cover what he had already taken. However, there was insufficient evidence within the summary judgment papers to determine whether this was done with bad faith.

in the estate and in the beneficiaries' share, so an appropriate portion might well be included by the Pennsylvania court as part of James' debt to the estate, but has not yet been adjudicated there.

Karen seeks to have the $14,050.45 in attorneys' fees assertedly incurred while prosecuting this Adversary declared nondischargeable. She argues that, as legal fees incurred in bringing this action are the direct result of James' defalcation, it would be appropriate to charge only James with such legal fees as well as to make those fees non-dischargeable. Plaintiff relies on a Supreme Court case to support her position; however, the relied upon case is inapplicable to the case at hand. In *Cohen v. de la Cruz*, —— U.S. ——, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), the Court held that the term "debt" in § 523(a)(2)(A) ( denying discharge for a debt to the extent obtained by fraud) encompasses punitive damages as well as attorneys' fees awarded under state law. However, that opinion was specific to § 523(a)(2)(A) of the Bankruptcy Code, and it highlighted the distinction between limiting recovery under § 523(a)(2)(A) to the amount of the money, services, or property obtain by fraud and the amount of damages actually suffered by the innocent creditor. *Id.* at ——, 118 S.Ct. at 1218 (discussing situation where builder fraudulently represent he will use certain materials only to use inferior supplies causing far more in damages to creditor than creditor originally paid debtor for work).

More importantly, the attorneys' fees in *Cohen* were awarded under the New Jersey Consumer Fraud Act. In the case at bar, the state court has not awarded Plaintiff attorneys' fees for bringing this action, or at least not yet. Nor was this action brought under any statute which authorizes this Court to award attorneys' fees. If such a statute existed or if 11 U.S.C. § 523 itself provided that fees for prosecuting an Adversary case would become additional debt, the situation might be otherwise. However, it is clear that, without an award of attorneys' fees under non-bankruptcy law, the fees incurred by Plaintiff's attorneys cannot even be awarded herein, let alone made nondischargeable.

It is true that the Seventh Circuit stated that "ancillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, their status depends on that of the primary debt." *Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir.1987) (quoting *In re Hunter*, 771 F.2d 1126, 1131 (8th Cir.1985)). However, even in *Klingman*, the court was referring to an award of attorneys' fees which was stipulated to in a consent judgment, not a separate award of attorneys' fees made by the bankruptcy court which heard the dischargeability action. *See also In re Pawlinski*, 170 B.R. 380, 381 (Bankr.N.D.Ill.1994) (finding award of attorneys' fees nondischargeable where attorneys' fees were awarded in underlying state court action).

Thus, Plaintiff's complaint will be denied to the extent it seeks adjudication here of the non-dischargeability of attorneys' fees incurred prosecuting this action. While those fees might be charged by the probate court, whether such fees can be allowed under Pennsylvania law for prosecuting the Adversary is up to that court. However, the *Klingman* authority would support nondischargeability for any fees found by the Pennsylvania court to be due as a result of Defendant's defalcation, as well as costs and postjudgment interest.

### CONCLUSION

For reasons set forth above and pursuant to order separately entered, the debt owed by Debtor James A. Kusmierek to Plaintiff as representative of the probate estate of Freda Kusmierek will be declared non-dischargeable to the extent of $20,624.38 heretofore adjudicated in the Pennsylvania court, plus post-judgment interest and costs allowed under Pennsylvania law, plus any additional amounts that the same court may adjudicate under Pennsylvania law for additional damages or recovery resulting from Defendants' defalcation, including fees and litigation expenses if thereby allowed.

However, Plaintiff's request to this Court to find award attorneys' fees and expenses to be allowed and adjudicated here against James A. Kusmierek and to be excepted from discharge is denied for lack of jurisdic-

tion, without prejudice to seeking such fees as an additional allowance in the Pennsylvania probate court under Pennsylvania law by reason of the defalcation of this Defendant.