In re Howard **FEINER**, Debtor.

CSC Holdings, Inc., Plaintiff,

v.

Howard Feiner, Defendant.

Bankruptcy No. 99–12009–7.
Adversary No. 99–5249.

United States Bankruptcy Court,
D. Kansas.

Sept. 27, 2000.

Daniel J. Lefkowitz, Patrick J. Sullivan, Jericho, NY, for plaintiff.

William B. Sorensen, Wichita, KS, for plaintiff.

William H. Zimmerman, Case, Moses, Zimmerman & Wilson, P.A., Wichita, KS, for debtor/defendant.

Edward J. Nazar, Wichita, KS, trustee.

## MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

Plaintiff CSC Holdings, Inc. ("CSC") filed a Complaint to Determine Non–Dischargeability of Debt, which CSC and Debtor/Defendant Howard Feiner ("Feiner") have asked the Court to determine on their submitted Stipulation of Facts and memoranda of law. In Feiner's memorandum in response to CSC's memorandum, Feiner stipulated to paragraphs 11, 12, 13 and 14 of CSC's statement of facts. Feiner also filed a Motion to Supplement the Record. The stipulated facts are paraphrased as follows.

## STIPULATION OF FACTS

In 1997, after a trial in the United States District Court for the Eastern District of New York, the court issued an Opinion and Order finding that Feiner had used a descrambling device purchased from Video–Link to intercept CSC's[1] pay-per-view programming services for an aggregate period of at least two years. The District Court awarded statutory damages to CSC in the amount of $5,000; entered a permanent injunction against Feiner's future violation of the Communications Act; dismissed Feiner's counterclaim; and directed CSC to submit documentation of its attorneys' fees. The District Court ultimately awarded $20,036.25 in attorneys' fees and $1,856.00 in disbursements to CSC. Thus, the total amount of Feiner's liability to CSC is $26,892.25. This judgment, the parties stipulate, is a final order.

In 1999, Feiner filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code.[2] CSC has not filed a proof of claim, but claims it is owed $26,892.25.[3] CSC filed a complaint under § 523(a)(6)[4] seeking the Court's determination that CSC's judgment against Feiner is not dischargeable.

## FINDINGS OF FACT BASED ON STIPULATED EXHIBITS

In their Stipulation, CSC and Feiner stipulated to admission of a number of documents and transcripts for this Court's consideration: the District Court's Opinion and Order entered October 17, 1997; the District Court's Order entered March 6, 1998; the Transcript of the Bench Trial, July 21–22, 1997, in the District Court action; the Second Circuit Court of Appeal's Opinion affirming the District Court's rulings; and the Depositions of Howard Feiner, Martin Golub, Lynn Gruenfelder, Joel Schwartz, David Pessin.[5]

1. At the time of the litigation and judgment in District Court, CSC was known as Cablevision Systems Corporation, but it is now known as CSC. For clarity this Court will refer to the entity as CSC.

2. Future references are to Title 11 of the United States Code unless otherwise indicated.

3. CSC did not file a proof of claim because this Court's Notice of Commencement of Case under Chapter 7 of the Bankruptcy Code, Meeting of Creditors and Fixing of Dates, instructed creditors in this no asset bankruptcy, to not file a proof of claim unless they received further notice to do so.

4. CSC's Complaint also sought a determination under § 523(a)(4), but CSC has apparently abandoned that cause of action. CSC does not mention § 523(a)(4), fiduciary capacity, embezzlement, or any of the elements of § 523(a)(4) in its Memorandum Brief.

5. For reasons discussed *infra,* the Court adopts the District Court's findings of facts in its October 17, 1997 order; but the Court does not make findings of fact based on any other stipulated exhibits.

***District Court's Findings of Fact in Opinion and Order entered October 17, 1997.***

CSC [6] is a cable television system operator that is franchised by the towns and municipalities of Nassau County, New York, to provide them with cable television service. CSC offers a range of programming options to individual subscribers and enters into a contract with each subscriber based upon the package received. In addition to a basic level service that provides a range of network and cable channels, a subscriber may contract to pay additional charges in order to receive one or more "premium" channels, such as Home Box Office or Cinemax. CSC also offers "pay-per-view" programming, which allows subscribers to order individual movies, sports or entertainment events and be charged a fee for each movie or event received.

If an individual subscriber does not contract to receive channels, the programming signal for those channels is "scrambled" by CSC, which blocks their reception. This is also the case with respect to individual pay-per-view events or movies for which a subscriber has not contracted. However, it is possible to purchase an electronic device commonly known as a "descrambler," that when connected to equipment installed by CSC, allows for unauthorized reception of blocked signals.

Howard Feiner, while a customer of CSC, bought and used a descrambling device that permitted him to obtain service, namely, pay-per-view, for which he had not contracted. Feiner admits that he purchased the descrambler from Video–Link Enterprises, Inc. on July 26, 1990, and that

he used it successfully over a period of a few days. Feiner further admits that he returned the device to Video–Link for exchange because it became inoperative, and Video–Link sent him another model in exchange on August 10, 1990, that he used for a period of at least two years.

## CONCLUSIONS OF LAW

 CSC seeks a determination that Feiner's debt is not dischargeable under § 523(a)(6), which excepts from discharge, "debts for willful and malicious injury by the debtor to another entity or to the property of another entity." [7] CSC has the burden of proving by a preponderance of evidence that Feiner's debt is nondischargeable under § 523(a)(6). [8] Under this section, the Court must determine whether the debt is for an injury that is both willful and malicious. In *Kawaauhau v. Geiger*, [9] the Supreme Court defined "willful" as a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.

 Before the *Geiger* [10] decision, the focus of the "malicious" inquiry was on the debtor's actual knowledge or the reasonable foreseeability that her conduct would result in injury to the creditor, "not on abstract and perhaps moralistic notions of the 'wrongfulness' of the debtor's act." [11] But, there is little distinction now between the willful and malicious elements, given the Supreme Court's holding that the actor must have specifically intended the injury.

In this case, the United States District Court for the Eastern District of New York granted judgment to CSC under

---

6. The District Court referred to the company as Cablevision, but it is now known as CSC.

7. 11 U.S.C. § 523(a)(6).

8. *Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

9. 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

10. *Id.*

11. *In re Posta,* 866 F.2d 364, 367 (10th Cir. 1989) (citations omitted). *See also In re Pasek,* 983 F.2d 1524, 1527 (10th Cir.1993) (stating that " 'willful and malicious injury' occurs when the debtor, without justification or excuse, and with full knowledge of the specific consequences of his conduct, acts notwithstanding, knowing full well that his conduct will cause particularized injury").

§ 553(1) of the Communications Act[12] which provides:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

The District Court found that Feiner intercepted or received pay-per-view service over CSC's cable system, without authorization, and without paying for the service. The District Court, having considered the testimony of witnesses, found Feiner's testimony and defenses not credible. Feiner claimed that he bought a descrambler to receive service he was already receiving. This, of course, defies common sense and reason. As many other courts have found, these descramblers have only one purpose: the interception of cable television programming services that are otherwise scrambled.[13] Feiner also claimed that he had no intent to steal pay-per-view service, for had that been his intent, he would have also stolen premium channels instead of paying for them. The District Court did not find that defense credible. Feiner's third defense demonstrates why the District Court found his second defense not credible. His third defense was, in essence, "I am paying for services I don't use, therefore, I should get the pay-per-view service for free!"

12. Title 47, United States Code, § 553.

13. *See, e.g., Intermedia Partners Southeast v. QB Distributors L.L.C.,* 999 F.Supp. 1274, 1279 (D.Minn.1998) ("[B]ecause these devices constantly descramble all services, including pay-per-view programming, they 'run counter' to the controlled, event- or service-specific descrambling cable providers utilize. Thus, no cable provider uses or authorizes the type of equipment defendants sell"); *Subscription Television of Greater Washington v. Kaufmann,* 606 F.Supp. 1540 (D.D.C.1985) ("There is only one purpose to be achieved by modifying a decoder device so as to eliminate its addressability function: to enable a user to

The District Court found credible the testimony of Feiner's former wife that Feiner instructed her to not allow CSC service personnel into the house unless he had "unhooked the wires." This, of course, demonstrates that Feiner was using the descrambler. Why else would it be hooked up? It further demonstrates that Feiner knew he did not have CSC's authorization, and that he knew he was doing injury to CSC by getting the pay-per-view service for free. It is clear that the District Court concluded that Feiner received pay-per-view service, knowingly received it, and received it knowing that he had no authorization from CSC to receive it without paying for it.

Feiner, an engineer, is an educated man. His claim that he purchased the descrambler only to get service for which he had already paid, is a thoroughly disingenuous claim. Also disingenuous is Feiner's defense that, had he wanted to steal pay-per-view service, he wouldn't have contracted with CSC to purchase the premium channels for which he did pay. Furthermore, there is no merit in Feiner's claim that he was entitled to free pay-per-view service since he worked in Connecticut six days a week in 1990 and was unable to use the service he was paying for.

■ These findings must be given preclusive effect in this case. The doctrine of collateral estoppel requires the court to refrain from relitigating factual matters already decided in a previous court proceeding.[14] The Court is bound by factual

receive and unscramble an STV signal without notifying the signal provider.")

14. *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) [collateral estoppel applies in dischargeability proceedings in bankruptcy]; *Murdock v. Ute Indian Tribe of Uintah and Ouray Reservation,* 975 F.2d 683, 687 (10th Cir.1992), cert. denied, 507 U.S. 1042, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993) [Federal principles of collateral estoppel apply to prior judgments that are rendered by a federal court]; *McCart v. Jordana (In re Jordana),* 232 B.R. 469, 475–76 (10th Cir. BAP 1999), aff'd 216 F.3d 1087 (10th Cir.2000).

determinations made in a previous court on issues where:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[15]

■ The issues of Feiner's use of the descrambler without justification or excuse, with intent to receive service without paying for it, and with knowledge that he had no authorization from CSC and was thus stealing from CSC, are all issues that were actually and necessarily litigated in the District Court action. That litigation resulted in a final and valid judgment against Feiner. Thus, this Court will not relitigate the issues of Feiner's intent, knowledge, and unauthorized use of the descrambler.

■ This Court agrees with CSC that, although the parties stipulated not only to the District Court's opinion, but to the admission of the trial transcript and depositions, this Court is precluded from reexamining the trial transcript and deposition. The District Court has made findings of fact on the basis of that testimony and this Court gives preclusive effect to the District Court's findings. Further, this Court overrules and denies Feiner's motion to supplement the record with affidavits, a letter, and a partial transcript of the trial of his divorce from his former wife. Feiner and CSC agreed to submit this case on stipulations and CSC does not stipulate to this Court's consideration of the affidavits and other supplemental documents.[16] Furthermore, these documents are hearsay, and do not affect the preclusive effect of the District Court's findings.

Feiner argues that even if the judgment is not dischargeable, the attorney's fee award portion of the judgment is dischargeable. The judgment against Feiner consisted of $5000 in statutory damages under § 553(c)(3)(A)(ii) of the Communications Act;[17] $1,856.00 in costs and disbursements; and $20,036.25 in attorneys fees as authorized by § 5532(c)(2)(C). Feiner appealed the judgment to the Second Circuit Court of Appeals. It affirmed the judgment on June 22, 1999. Given that the attorney fee amount is four times greater than the damages awarded, Feiner asks the Court to review the dischargeability of the attorney's fees.

In *Cohen v. de la Cruz*,[18] the Supreme Court held that the scope of a debt determined to be nondischargeable under § 523(a)(2)(A) included treble damages, attorney's fees and costs, as well actual damages. The Court rejected debtor's argument that the debt excepted from discharge under § 523(a)(2)(A) was limited to money, property or services obtained by fraud. The Court concluded that the phrase "to the extent obtained by" in § 523(a)(2)(A), means that

> the exception encompasses "any debt ... for money, property, services, or ... credit, to the extent [that the money, property, services, or ... credit is] obtained by" fraud. The phrase thereby makes clear that the share of money,

---

**15.** *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir.1995) (quotation omitted).

**16.** Feiner wants the Court to consider the affidavit of his son, Jason Feiner, and the affidavits of Feiner's friends, Lynn Gruenfelder, Martin Golub and Joel Schwartz, all of whom assert that they never saw Feiner use the descrambler, and that Feiner's former wife (Jason Feiner's stepmother) is a liar. The letter from Martin Golub makes similar assertions. The partial transcript of the di-

vorce action between Feiner and his former wife lacks any contextual substance, but includes the divorce judge's chastisement of Feiner's former wife for changing her testimony about a bank account.

**17.** Title 47, United States Code.

**18.** 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998).

property, etc., that is obtained by fraud gives rise to a nondischargeable debt.[19] The Court further concluded that

Once it is established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge.[20]

The Court further noted that a fair reading of § 523(a)(6), and other subsections of § 523(a), all of which except from discharge a "debt for" something, demonstrates that "debt for" is not limited to restitution for an actual loss or actual damages.

Petitioner's reading of "debt for" in § 523(a)(2)(A), however, is at odds with the meaning of the same phrase in parallel provisions. Section 523(a) defines several categories of liabilities that are excepted from discharge, and the words "debt for" introduce many of them, viz., "debt ... for a tax or a customs duty ... with respect to which a return ... was not filed," § 523(a)(1)(B)(i), "debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," § 523(a)(4), "debt ... for willful and malicious injury by the debtor to another entity," § 523(a)(6), and "debt ... for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated," § 523(a)(9). None of these use "debt for" in the restitutionary sense of "liability on a claim to obtain"; it makes little sense to speak of "liability on a claim to obtain willful and malicious injury" or "liability on a claim to obtain fraud or defalcation." Instead, "debt for" is used throughout to mean "debt as a result of," "debt with respect to," "debt by reason of," and the like, see American

Heritage Dictionary 709 (3d ed.1992); Black's Law Dictionary 644 (6th ed.1990), connoting broadly any liability arising from the specified object, see *[Pennsylvania Dept. of Public Welfare v. ]Davenport,* supra, [495 U.S. 552] at 563, 110 S.Ct., [2126] at 2133 [109 L.Ed.2d 588 (1990)] (characterizing § 523(a)(7), which excepts from discharge certain debts "for a fine, penalty, or forfeiture" as encompassing "debts arising from a 'fine, penalty, or forfeiture' ").[21]

■ Thus, although *Cohen* construed the scope of the exception to discharge under § 4523(a)(2)(A), the Supreme Court made clear that § 523(a)(6) excepts from discharge debts as a result of, debts with respect to and debts by reason of a willful and malicious injury by the debtor to another entity.

■ Because the treble damages awarded in *Cohen* were statutorily authorized, some bankruptcy courts have limited their holding to exclude from discharge only those attorneys' fees and costs that are authorized either by statute or by contract between the parties.[22] But, in this case, the attorney's fees awarded are authorized by § 553(c)(2)(C) of the Communications Act,[23] which allows for the recovery of "full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." The District Court awarded $20,036.25 in attorneys' fees and $1,856.00 in disbursements, pursuant to § 553(c)(2)(C), and in so doing, determined these amounts reasonable. This Court has no jurisdiction to review this attorney's fee award for reasonableness, as Feiner requests. Thus, this Court concludes, based on the Supreme Court's ruling in *Cohen,*

---

**19.** *Id.* at 218, 118 S.Ct. 1212.

**20.** *Id.*

**21.** *Id.* at 219–220, 118 S.Ct. 1212.

**22.** *See, e.g., In re Lutgen,* 1999 WL 222605 (Bankr.W.D.N.Y.1999); *Clark & Gregory, Inc.*

*v. Hanson (In re Hanson),* 225 B.R. 366, 376 (Bankr.W.D.Mich.1998); *In re Kusmierek,* 224 B.R. 651, 658 (Bankr.N.D.Ill.1998).

**23.** Title 47, United States Code, § 553(c)(2)(C).

that the attorney's fee award is also not dischargeable.

**IT IS THEREFORE BY THE COURT ORDERED** That the Debtor's Motion to Supplement the Record is overruled and Denied.

**IT IS FURTHER ORDERED BY THE COURT** That Feiner's debt to CSC, in the amount of $26,892.25 is not dischargeable under 11 U.S.C. § 523(a)(6).

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.