**In re Sharon HUTCHINS, Debtor.**

No. 03–05484–TOM–13.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Dec. 23, 2003.

Karyl Rasmussen, Birmingham, AL, for Debtor.

Austin Huffaker, for Movant.

### MEMORANDUM OPINION AND ORDER

TAMARA O. MITCHELL, Bankruptcy Judge.

This matter comes before the Court on a Motion to Dismiss filed by Regions Bank d/b/a Regions Mortgage on July 30, 2003. Appearing at the October 29, 2003 hearing of this matter were Karyl Rasmussen, Attorney for Sharon Hutchins (hereinafter "Debtor") and Austin Huffaker, Attorney for Regions Bank d/b/a Regions Mortgage (hereinafter "Movant"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a)(1994)[1] and the district court's General Order of Reference dated July 16, 1984, as amended July 17, 1984.[2] This is a core proceeding arising under Title 11 of the United States Code

---

1. 28 U.S.C. § 1334(b) provides:

   Notwithstanding an Act of Congress that confers exclusive jurisdiction on a court or courts other than the district court, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

   28 U.S.C. § 151 provides:

   In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as other wise provided by law or by rule or by order of the district court.

   28 U.S.C. § 157(a) provides:

   Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for that district.

2. The General Order of Reference ·dated July 16, 1984, as amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides: The general order of reference entered July 16, 1984 is hereby amended to add that there ·be hereby referred to the Bankruptcy Judges of this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

as defined in 28 U.S.C. § 157(b)(2)(A).[3] The Court in this matter must decide whether to dismiss Debtor's case pursuant to 11 U.S.C. § 109(g)(2). This Court, having considered the pleadings, the arguments of counsel, the testimony, and the law, finds and concludes as follows.[4]

## I. FINDINGS OF FACT [5]

Debtor filed this, her second petition for relief under Chapter 13 of the Bankruptcy Code, on June 20, 2003. Movant filed a "Motion to Dismiss in Accordance with 109(g)" on July 30, 2003.[6] The Motion to Dismiss was set for a hearing on September 18, 2003.[7] At that hearing, this Court entered a scheduling order for briefs and set a trial date of October 29, 2003.[8]

Debtor filed her first petition for relief under Chapter 13 of the Bankruptcy Code on January 18, 2002.[9] At the hearing of this matter, Debtor testified that she filed for bankruptcy at that time because her husband had moved out of their home in December 2001, leaving Debtor with three children, two mortgages and other bills to pay. Debtor also testified that despite these problems she was current on the Movant's mortgage at the time of the filing of that case.

In April 2002, during the prior Chapter 13, Debtor missed her mortgage payment to Movant because she had to pay unexpected tuition expenses when her daughter's scholarship "did not cover as much as usual." Movant filed a Motion for Relief from Stay on May 29, 2002 in the prior Chapter 13.[10] This motion was settled by agreement of the parties.[11] At the hearing of this matter, Debtor testified that she entered into this settlement on the Motion for Relief from Stay because she assumed all her financial problems were resolved. Debtor eventually paid the April 2002 mortgage payment along with a late fee.

In September 2002, Debtor fell three to four months behind on her mortgage payments to Movant. Debtor testified that her husband's failure to pay his child support payments as agreed coupled with other expenses caused this arrearage. On September 18, 2002, Movant filed a second Motion for Relief from Stay in the prior case.[12] Again, the motion was settled by agreement of the parties.[13] Debtor testified that she agreed to settle the second Motion for Relief from Stay after speaking

---

3. 28 U.S.C. § 157(b)(2)(A) provides:
   (b)(2) Core proceedings include, but are not limited to—
   (A) matters concerning the administration of the estate[.]

4. This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

5. Pursuant to Rule 201 of the Federal Rules of Evidence, the Court my take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B. July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

6. Bankr.Proc. No. 9.

7. Bankr.Proc. No. 10.

8. Bankr.Proc. No. 13.

9. Case No. 02–00479–TOM–13.

10. Case No. 02–00479 Bankr.Proc. No. 12.

11. Case No. 02–00479 Bankr.Proc. No. 15, "Order Conditionally Denying Relief From The Automatic Stay."

12. Case No. 02–00479 Bankr.Proc. No. 17.

13. Case No. 02–00479 Bankr.Proc. No. 25, "Order Conditionally Denying Relief From the Automatic Stay."

with her attorney because she did not want to "jeopardize her job" by missing work in order to make a court appearance to oppose the Motion for Relief from Stay. The Order that was entered on the second Relief from Stay Motion provided for the Debtor to resume her monthly mortgage payments to the Movant.[14] It also provided that if any future mortgage payments to Movant were not received, then relief from the automatic stay was granted without a separate order.[15]

In June 2003, Debtor received an acceleration notice from Movant. On June 11, 2003, she filed a Motion to Dismiss [16] the 2002 Chapter 13 case because she could not pay the accelerated amount and she was afraid Movant would foreclose on her home.[17] An Order [18] was entered on June 18, 2003 granting the Debtor's Motion to Dismiss the Chapter 13 case. At the time of the dismissal, Debtor had paid a total of $7,874 into that case.[19]

In this and her previous Bankruptcy case, Debtor filed a plan which proposed to pay her regular mortgage payments direct to the mortgage holders and to pay 100% of her remaining debts through the Chapter 13 Trustee.[20] Those debts are listed in the schedules as follows: $35,000.00 owed on the first mortgage; $23,976.15 owed on the second mortgage; $9,534.00 owed on an automobile loan; $330.00 owed to Gordon's Jewelers, $3,489.54 owed on a personal loan; $565.70 owed to Pediatric An-esthesia Association for medical services; a $42.00 account balance with Sound and Spirit; and $7,362.07 in credit card charges owed to various companies.[21]

At the hearing of this matter, Debtor testified that she works at State Farm Insurance as a policy service assistant and has been with the company for six years. Debtor was also expecting to begin work on a part time basis at Wal–Mart with earnings between $260 and $290 a month. Debtor's estranged husband works for the Birmingham News and has been there for six years. Though he has not paid his child support consistently in the past, Debtor expects to receive monthly support payments of $300–$400 from him each month. She also receives financial assistance of $300–$350 a month from her father. Debtor further testified that she was current on her mortgage and payments to the Trustee and was able to make her November mortgage payment.

As of October 14, 2003, Debtor's home had a value of $103,500.[22] She owes $46,779.30 on the second mortgage [23] and testified that she owes $32,655.37 on her mortgage with Movant. Thus, Debtor has a total equity of $24,065.33 in the home.

## II. CONCLUSIONS OF LAW

### A. § 109(g)(2)

Movant contends that Debtor's case should be dismissed pursuant to

---

14. *Id.*

15. *Id.*

16. Case No. 02–00479 Bankr.Proc. No. 29.

17. Debtor testified that she never received a foreclosure notice.

18. Case No. 02–00479 Bankr.Proc. No. 30.

19. Case No. 02–00479 Bankr.Proc. No. 32/32A, Chapter 13 Trustee's "Final Report and Account."

20. Bankr.Proc. No. 1, "Chapter 13 Plan Summary"; Case No. 02–00479 Proc. No. 1, "Chapter 13 Plan Summary."

21. Bankr Proc. 2, "Schedules."

22. Debtor's Ex. A, "Tax Assessor's Statement for 2003."

23. Debtor's Ex. B, Statement and printout for Green Tree Servicing, LLC, the holder of the second mortgage on Debtor's home place.

Bankruptcy Code § 109(g)(2) which states the following in pertinent part:

> (g) Notwithstanding any other provision of this section, no individual... may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> ...
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g)(2). The United States Supreme Court has held that issues involving statutory interpretation must begin with an examination of the explicit language of the statute.[24] When "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"[25] Thus, "the plain meaning of legislation should be conclusive, except in 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'"[26] "In such cases, the intentions of the drafters rather than the strict language, controls."[27]

■ Some Courts have found the language of § 109(g)(2) to be ambiguous and worthy of further interpretation. Thus, several lines of interpretation exist as to the proper application of § 109(g)(2). Some Courts have held that § 109(g)(2) should be applied strictly because of the mandatory language in the statute.[28] Other courts have held that judges should have discretion allowing for the equitable considerations in each individual case.[29] There are also distinct lines of interpretation which hinge on the definition of the word "following" in the statute.[30]

---

24. *United States v. Ron Pair Enterprises,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *see also Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985).

25. *Ron Pair,* 489 U.S. at 241, 109 S.Ct. 1026 (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

26. *Ron Pair,* 489 U.S. at 242, 109 S.Ct. 1026 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)).

27. *Id.*

28. *In re Bigalk,* 813 F.2d 189 (8th Cir.1987); *In re Munkwitz,* 235 B.R. 766 (E.D.Pa.1999); *Andersson v. Security Fed. Sav. and Loan (In re Andersson),* 209 B.R. 76 (6th Cir. BAP 1997); *In re Denson,* 56 B.R. 543 (Bankr. N.D.Ala.1986); *Kuo v. Walton,* 167 B.R. 677 (M.D.Fla.1994); *In re Rist,* 153 B.R. 79 (Bankr.M.D.Fla.1993); *In re Tooke,* 133 B.R. 661 (Bankr.M.D.Fla.1991); *In re Stuart,* 297 B.R. 665, 668 (Bankr.S.D.Ga.2003)(finding that statutory language is mandatory and it only requires judicial interpretation "when a literal application of the statute would lead to an absurd or unconstitutional result."); *In re*

*Rives,* 260 B.R. 470 (Bankr.E.D.Mo.2001); *In re Keziah,* 46 B.R. 551 (Bankr.W.D.N.C.1985); *In re Keul,* 76 B.R. 79 (Bankr.E.D.Pa.1987); *In re Rankin,* 288 B.R. 201 (Bankr.E.D.Tenn. 2003); *Chrysler Fin. Corp. v. Dickerson (In re Dickerson),* 209 B.R. 703 (W.D.Tenn.1997).

29. *In re Luna,* 122 B.R. 575 (9th Cir. BAP 1991); *Tooke v Sunshine Trust Mortgage (In re Tooke),* 149 B.R. 687 (M.D.Fla.1992); *In re Ramos,* 212 B.R. 29, 30 (Bankr.D.P.R.1997)(adopting an approach which "recognizes that the language of the statute is mandatory, but suggests that there may be situations where the court will suspend enforcement of the statute for equitable reasons."); *In re Santana,* 110 B.R. 819 (Bankr.W.D.Mich.1990); *In re Copman,* 161 B.R. 821 (Bankr.E.D.Mo.1993); *In re Hamm,* 157 B.R. 137 (Bankr.E.D.Mo.1993); *In re Sole,* 233 B.R. 347 (Bankr.E.D.Va.1998); *In re Duncan,* 182 B.R. 156 (Bankr.W.D.Va. 1995).

30. Once a Motion for Relief from Stay is resolved, it is resolved. This Court believes "following" for purposes of 109(g)(2) implies a situation where a pending Motion for Relief from Stay exists and debtor is attempting

Though § 109(g)(2) has developed several distinct lines of interpretation, this Court finds that the statutory language is clear and unambiguous. Debtor had a bankruptcy case in which a Motion for Relief from Stay was filed, disposed of and concluded (i.e., it was no longer pending), she moved to voluntarily dismiss that case after and/or following the filing of a motion for relief from stay and she filed the current bankruptcy petition within 180 days after that previous case was voluntarily dismissed. Thus, the facts of this matter fit within the purview of § 109(g)(2) and if applied as written the statute prescribes dismissal of this case. However, this mechanical application of § 109(g)(2) in every situation has been described as undesirable.[31] This Court must now analyze whether this strict, mechanical application leads to an absurd result.

### B. Strict application of § 109(g)(2).

This Court is concerned that several different scenarios could occur which could result in and absurd result and/or a result contrary to Congress' intention. For example, mandatory application in every case would penalize debtors even when the Motion for Relief from Stay is resolved in the debtor's favor.[32] There is also the possibility of potential abuse of § 109(g)(2) by creditors because at least one motion for relief from stay is filed in almost every Chapter 13 bankruptcy case. Thus, a debtor's motion for voluntary dismissal after the filing of that motion, even if one to two years later, would invoke § 109(g)(2) in most cases. It is unlikely that Congress

would permit abuse by creditors who could file a motion for relief from stay, whether frivolous or not, in every case. Then, once any debtor seeks to voluntarily dismiss his or her case for any reason, any creditor, whether the same or different creditor and whether successful or not on the merits of the motion for relief from stay, could then file a motion to dismiss in the subsequent case pursuant to § 109(g)(2) assured of success. Surely Congress did not seek to favor or encourage this creditor abuse over any perceived threat of debtor abuse.

Moreover, if a debtor has had a relief from stay motion filed in her case and she seeks to abuse the system and the provisions in § 109(g)(2), she can simply cease making payments to the Trustee thereby causing the Trustee to seek dismissal of the case. Surely it is absurd to have the following result: Debtor stops making his or her Chapter 13 payments after a motion for relief from stay is filed. Trustee files a motion to dismiss the case and the motion is granted. Debtor is eligible for a new Chapter 13 without the mechanical application of 109(g)(2).[33] Alternatively, after or following the filing of a motion for relief from stay, Debtor suffers a job loss, stolen purse, on the job injury or other catastrophic event. She voluntarily dismisses her Chapter 13 to file a new Chapter 13 to include additional debt or to propose a different reorganization or repayment plan in light of the substantial change in the Debtor's finances. Under the latter facts, Movant would argue that § 109(g)(2) pro-

---

avoid a trial or adjudication of the motion. For an in-depth analysis of "following," *see In re Richardson*, 217 B.R. 479 (Bankr.M.D.La. 1998), which examines three lines of interpretation for the word.

**31.** *Fulton Fed. Sav. & Loan v. Milton (Matter of Milton)*, 82 B.R. 637 (Bankr.S.D.Ga.1988).

**32.** The motion might have been filed in error or the debtor was current on the payments and the movant's records were incorrect.

**33.** The creditor could raise the issue of eligibility pursuant to § 109(g)(1) in the subsequent case, but it would have to prove the required elements of that section.

hibits this second opportunity for the debtor.

■ An examination of Congressional intent reveals that § 109(g)(2) was enacted to curb debtor abuses of the Bankruptcy Code and make its use a last resort.[34] Thus, Congress intended § 109(g)(2) to prevent abuse such as repetitive and abusive bankruptcy filings by debtors. However, Congress enacted the Bankruptcy Code to help, not hurt, debtors and it generally favors a fresh start.[35] Debtors may have unforeseen circumstances and may honestly need to dismiss a bankruptcy case and file again shortly thereafter. To this Court, "abusive filings" means repetitive filings where a debtor is not paying and uses the automatic stay in order to prevent collection activity by creditors while debtor avoids making payments to creditors. This Court is of the view that a repetitive filing and an abusive filing are not necessarily one in the same.

### C.  Discussion

This Court concludes that the automatic, strict, mandatory or mechanical application of 11 U.S.C. § 109(g)(2) in every case could and would lead to absurd results in some if not many Chapter 13 cases. Thus, this Court will look at the facts of this case to determine if the results are absurd if that section is strictly applied.

In this case, the Debtor is current on her mortgage payments to Movant and her payments to the Chapter 13 Trustee. She also paid more than $7,000 into her previous Chapter 13 Bankruptcy case and has substantial equity in her home. She has proposed to pay 100% of all claims in this and her previous Chapter 13 case. The two Motions for Relief from Stay were settled and there is no indication that the motions would have been granted if they were adjudicated. This Debtor is not attempting to avoid paying her obligations, she simply ran into unforeseen financial difficulty. Further, the Eleventh Circuit has noted the value for a Debtor in preserving her home in a Chapter 13.[36] This Court's view is that strict application of § 109(g)(2) in this case would have an absurd result and one contrary to Congress' intention when it enacted § 109(g)(2).[37]

### CONCLUSION

Movant challenges Debtor's eligibility to avail herself of the protections afforded

**34.** Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Ed.* § 23–5 fn. 14 (2000 & Supp.2002)(quoting 130 CONG. REC. 8894 (daily ed. June 29, 1984)(statement of Senator Hatch).).

**35.** *Gust v. United States (In re Gust),* 197 F.3d 1112, 1115 (11th Cir.1999). Furthermore, the Eleventh Circuit cited the "inherent flexibility" of Chapter 13 in *Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle),* 12 F.3d 1008, 1011 (1994), where such flexibility permitted the Court to construe 11 U.S.C. §§ 1322, 1329 in order to provide protection for the debtor's homestead. Also of note is the Eleventh Circuit opinion in *Jim Walter Homes, Inc. v. Saylors (In re Saylors),* 869 F.2d 1434 (11th Cir.1989), where the debtor's chapter 13 plan, which entirely consisted of debtor's mortgage arrearage, was confirmed even when debtor had received a discharge from a chapter 7 bankruptcy within the previous 180 days.

**36.** *Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle),* 12 F.3d 1008 (1994).

**37.** In this case, it is clear Debtor is paying her mortgage payments and Movant, as the holder of the first mortgage, is adequately protected. No explanation or reason why Movant is seeking dismissal in this particular Chapter 13 pursuant to § 109(g)(2) was given, argued or suggested by Movant's counsel. Had this been a case which this Court occasionally sees, where there is no equity or even negative equity in the property and no payments being made to the mortgage holder or the Trustee, then the Movant's interest in a dismissal would be clear.

consumers under the Bankruptcy Code because she had a previous case which was voluntarily dismissed less than 180 days before Debtor filed the instant Bankruptcy petition. Strict application of the mandatory language of Bankruptcy Code Section 109(g)(2) dictates that this case should be dismissed. However, consistent with the Supreme Court's holding in *Ron Pair*, Congressional intent must be examined when strict application of a statute would lead to an absurd result. Strict application of this statute in every situation would lead to absurd results and an examination of Congressional intent for enacting § 109(g)(2) reveals that it is improper to strictly apply the code section to the facts of this case. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that the Movant's Motion to Dismiss this pending Chapter 13 bankruptcy case is **DENIED.**