**In re Willie Gene BEAL, Jeanette Beal, Debtors.**

**Mary B. Grossman, Chapter 13 Trustee, Appellant,**

v.

**Willie G. Beal and Jeanette Beal, Appellees.**

**Nos. 05–03452–SVK, 05–C–1111.**

United States District Court, E.D. Wisconsin.

July 28, 2006.

88

David Walter Asbach, United States Department of Justice (ED–WI) Office of the Trustee, Milwaukee, WI, for Appellant.

Mary B. Grossman, Office of the Chapter 13 Trustee, Milwaukee, WI, Pro se.

Robert Michelson, The Michelson Law Office, Racine, WI, for Appellees.

### DECISION AND ORDER

ADELMAN, District Judge.

Pursuant to 28 U.S.C. § 158(a)(3), Mary Grossman, Chapter 13 Trustee ("Trustee"), seeks leave to appeal the interlocutory order of the bankruptcy court denying her motion to dismiss the bankruptcy petition of Willie G. and Jeanette Beal ("the Beals"). The Trustee moved to dismiss based on 11 U.S.C. § 109(g)(2), which prohibits a debtor who voluntarily dismisses a petition after a creditor has filed a request for relief from the automatic stay from refiling within 180 days.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2003, the Beals petitioned for bankruptcy and, pursuant to 11 U.S.C. § 362(a)(1), received the protection of the automatic stay.[1] In February 2004, pursuant to 11 U.S.C. § 362(d),[2] the Beals's mortgagee, Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), filed a request for relief from the stay. The Beals timely objected to Wells Fargo's request. However, the day after the Beals filed their objection, Wells Fargo filed an affidavit mistakenly asserting that the Beals had failed to object. As a result, the bankruptcy court granted Wells Fargo's request for relief. When it discovered that the Beals had timely objected, the court scheduled a

1. Section 362(a)(1) stays any "action or proceeding against the debtor." The stay remains in effect until the bankruptcy court disposes of the case or grants relief from the stay. *In re Williams,* 144 F.3d 544, 546 (7th Cir.1998).

2. Section 362(d) provides: "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay."

hearing. On the hearing date, with Wells Fargo's agreement, the court vacated its order granting relief from the stay.

Fourteen months later, the Beals voluntarily dismissed their petition and filed a second petition. Pursuant to § 109(g)(2), the Trustee moved to dismiss the refiled petition. The court held a hearing, and the Beals stated that they had dismissed and refiled because they had accumulated additional debt including medical debt and an electric bill, which they wished to include in the bankruptcy. Neither Wells Fargo nor any other creditor objected to the dismissal and refiling. The court denied the Trustee's motion to dismiss, stating that it hoped that the Beals could "get this Plan going, completed, keep their house, and make some payments on these medical bills." (Sept. 13, 2005 Tr. at 8.) The trustee appealed this determination.

## II. DISCUSSION

### A. Interlocutory Appeal

Under 28 U.S.C. § 158(a), I may grant leave to a party to appeal an interlocutory order of the bankruptcy court. In determining whether to grant leave, I consider the criteria in 28 U.S.C. § 1292(b). *See, e.g., BA Leasing Parties v. UAL Corp.,* No. 03 C 2232 & 03 C 2414, 2003 WL 22176068, at *4–5, 2003 U.S. Dist. LEXIS 16207, at *13–14 (N.D.Ill. Sept. 15, 2003). Under § 1292(b), I grant leave if the issue presented is "a question of *law,* it [is] *controlling,* it [is] *contestable,* and its resolution [will] *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.,* 219 F.3d 674, 675 (7th Cir.2000). In the present case, the Trustee's appeal raises a question of law, whether § 109(g)(2) required the bankruptcy court to dismiss the Beals's refiled petition. Such question is controlling because it is dispositive of the bankruptcy case. It is contestable because courts have interpreted § 109(g)(2) differ-

ently. *See* Ned W. Waxman, *Judicial Follies: Ignoring the Plain Meaning of Bankruptcy Code § 109(g)(2),* 48 Ariz. L.Rev. 149 (Spring 2006) [hereinafter *Judicial Follies* ] (discussing four different judicial interpretations of § 109(g)(2)). Finally, resolution of the issue will speed up the litigation. *See Neal v. Honeywell, Inc.,* 191 F.3d 827, 830 (7th Cir.1999). Thus, I will grant leave to appeal.

The Beals argue that 180 days have passed since they voluntarily dismissed their first petition, and that therefore the Trustee's appeal is moot. Although § 109(g)(2) is silent on the issue, the general rule that the pendency of a wrongfully filed petition during the 180 days tolls that period to prevent the debtor from wrongly benefiting from the automatic stay. *See, e.g., In re Wilson,* 85 B.R. 72, 73 (Bankr. N.D.Ill.1988); see also *In re Moody,* 336 B.R. 876, 880 (Bankr.S.D.Ga.2005); *In re Rankin,* 288 B.R. 201, 204 (Bankr. E.D.Tenn.2003); *In re Gregory,* 110 B.R. 911, 912 (Bankr.E.D.Mo.1989). Thus, by refiling, the Beals tolled the 180 day period. Therefore, the Trustee's appeal is not moot.

### B. Analysis of Bankruptcy Issues

■ I review the bankruptcy court's factual findings for clear error and its legal conclusions de novo. *Meyer v. Rigdon,* 36 F.3d 1375, 1378 (7th Cir.1994). In her appeal, the Trustee argues that pursuant to § 109(g)(2), the bankruptcy court should have dismissed the Beals's refiled petition. Section 109(g)(2) provides as follows:

no individual or family farmer may be a debtor ... who has been a debtor in a case ... at any time in the preceding 180 days if—... (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay.

Congress enacted § 109(g)(2) in 1984 for the purpose of curbing what it perceived to be.abusive repetitive bankruptcy filings by debtors. 130 Conf., Rec. 20, 088 (1984) (Statements of Sen. Hatch); Ned W. Waxman, *Resolving the Split of Authority Concerning Code Section 109(g)(2),* 10 *Norton Bankruptcy Law Advisor* 1, 1 (2005). The typical scenario that the provision is intended to prevent is a debtor's voluntary dismissal of a case and subsequent refiling of a new case for the purpose of "preventing creditors from acquiring relief from the automatic stay and pursuing foreclosing remedies in state court proceedings." *Id.* (quoting *In re Holder,* 151 B.R. 725, 727 (Bankr.D.Md.1993) (internal quotation marks omitted)). The statute gives secured creditors a 180 day window to pursue state law remedies free of the automatic stay. *See Holder,* 151 B.R. at 727; *see also In re Ulmer,* 19 F.3d 234, 235 (5th Cir.1994) (stating that without § 109(g)(2), "a debtor could move in and out of bankruptcy, forcing a creditor to pursue time and again the right to collect a debt"); *Matter of Patton,* 49 B.R. 587, 589 (Bankr. M.D.Ga.1985) (stating that § 109(g)(2) "is intended to address the situation in which ... [t]he debtor [attempts to] ... continually frustrate the creditor's attempts to foreclose."); William L. Norton Jr. & William L. Norton III, *Norton Bankruptcy Law & Practice 2d* § 115.7 (2006) (stating that "[s]ection 109(g)(2) was enacted to defeat the practice observed in some jurisdictions of multiple refilings in an effort to overcome the grant of relief from the stay in a prior case").

However, when it drafted § 109(g)(2), Congress used overly inclusive language such that the statute applies in situations that are unrelated to its purpose. *See* Waxman, *Judicial Follies, supra,* at 154 (stating that "the literal language of the statute operates more inclusively than Congress intended") (citations omitted);

*see also* Alan N. Resnick, et. al., 2 *Collier on Bankruptcy* § 109.08, at 109–54 (15th ed. rev.2005) (stating that in light of its purpose, § 109(g)(2) should not apply "if the debtor successfully defended against or resolved the motion for relief from the stay or paid in full the creditor who moved for relief" or if the first case is remote in time from the motion for stay relief); *In re Hutchins,* 303 B.R. 503 (Bankr.N.D.Ala. 2003) (declining to apply statute where application would create an absurd result); *In re Luna,* 122 B.R. 575, 576 (Bankr.9th Cir.1991) (declining to apply the statute where it punished the debtor "for acting in good faith"). Read literally, § 109(g)(2) requires a debtor to wait 180 days to file a bankruptcy petition after a creditor has requested relief even if the creditor filed the request in error and subsequently withdrew it and even if the request was meritless. *See* Waxman, *Judicial Follies, supra,* at 154 (stating that Congress could not have intended to punish a debtor for a creditor's motion that was filed in error or that lacks merit).

Courts have discussed the problems presented by § 109(g)(2)'s over inclusiveness. For example, the bankruptcy court in this district stated:

Surely it is absurd to have the following result: Debtor stops making his or her Chapter 13 payments after a motion for relief from stay is filed. Trustee files a motion to dismiss the case and the motion is granted. Debtor is eligible for a new Chapter 13 without the mechanical application of § 109(g)(2). Alternatively, after or following the filing of a motion for relief from stay, Debtor suffers a job loss, stolen purse, on the job injury or other catastrophic event. She voluntarily dismissed her Chapter 13 to file a new Chapter 13 to include additional debt or to propose a different reorganization or repayment plan in light of the

substantial change in the Debtor's finances. Under the latter facts, Movant would argue that § 109(g)(2) prohibits the second opportunity for the debtor.

*In re Howard,* 311 B.R. 230, 231–32 (Bankr.E.D.Wis.2004) (quoting *Hutchins,* 303 B.R. at 508–09) (internal quotation marks omitted).

The *Howard* court also explained that:

wooden application of the statute could lead to abuse by creditors. Motions for relief from stay are common in chapter 13 cases when debtors miss post-petition payments; occasionally, the creditor has made an accounting error, and withdraws the motion immediately after the debtor demonstrates that the payments in fact have been made. If the debtor dismissed a chapter 13 case "following" one of these erroneous motions for stay relief, strict application of the statute would bar the debtor from obtaining further bankruptcy relief for 180 days. The application of the statute to these facts, those posited in *Hutchins,* and indeed those present in the instant case (in which the motion for relief from stay was resolved nine months prior to the debtors' requested dismissal, and the debtors want to surrender the collateral to the mortgagee, not file serial bankruptcy petitions to frustrate the mortgagee's efforts to recover the collateral),

leads to absurd results that could not have been intended by Congress.

311 B.R. at 232.

Courts have struggled with the question of whether to apply § 109(g)(2) to fact situations that are within its literal language but that Congress could not have intended it to cover. Most courts have characterized the statute as "mandatory" and applied it without regard to the disposition of the request for stay relief in the prior case. Keith M. Lundin, *Chapter 13 Bankruptcy* § 23.1 (3d ed.2006); *see, e.g., In re Andersson,* 209 B.R. 76 (6th Cir. BAP1997); *In re Keziah,* 46 B.R. 551 (Bankr.W.D.N.C.1985). Other courts have treated § 109(g)(2) as discretionary and declined to apply it if the debtor acted in good faith or if applying the statute produced an absurd or unfair result. Waxman, *Judicial Follies, supra,* at 154; *see, e.g., Luna,* 122 B.R. at 577; *Patton,* 49 Bankr. at 589. However, courts treating the statute as discretionary have been criticized for ignoring its plain meaning, for inadequately justifying their conclusion that it is discretionary and for inviting debtors to argue almost as a matter of course that it should not be applied literally. Waxman, *Judicial Follies, supra,* at 153; *see also* Norton & Norton, *supra,* § 115.7 (stating that "the courts that have avoided precise application of § 109(g)(2) have not articulated reasons based on statutory construction or legislative history").[3]

---

3. Courts have employed two other approaches to § 109(g)(2). One approach reads the statute as precluding refiling only when there is a "causal connection between the creditor's motion for relief from stay and the debtor's subsequent motion for and obtaining of a voluntary dismissal." Waxman, *Judicial Follies, supra,* at 158; *see also In re Copman,* 161 B.R. 821, 823–24 (Bankr.E.D.Mo.1993). Courts employing this approach focus on the word "following" and construe it as meaning "to be the result of." *Id.* However, this interpretation has been questioned because in § 109(g)(2) "following" is not a verb, but a preposition meaning "subsequent to." Waxman, *Judicial Follies, supra,* at 160.

Other courts have applied § 109(g)(2) only when the motion for relief from stay is unresolved at the time that the debtor obtains a voluntary dismissal. *Id.* at 161. However, the pending approach is inconsistent with the purpose of the statute, which is to deter abusive bankruptcy filings. As one court explains, "[b]y restricting the application of § 109(g)(2) to those cases where there is a pending, unresolved motion for relief from stay at the time of the voluntary dismissal," courts "would allow a debtor to refile contin-

Thus, courts have been unable to develop a satisfactory approach to § 109(g)(2). Courts that emphasize its plain meaning and treat it as mandatory apply it to fact situations that Congress could not have intended it to cover. As a result, they cause harm to debtors that have not engaged in misconduct. Courts that treat the statute as discretionary, however, have difficulty squaring their approach with the language of the statute and are vulnerable to the criticism that the approach lacks standards. And, for the reasons discussed in footnote three, the causal connection and pending approaches are also problematic.

 In the present case, the Trustee advocates the mandatory approach to § 109(g)(2), and the Beals unsurprisingly favor one that is more flexible. In determining whether to apply a statute to a particular set of facts, I begin with the proposition that Congress "says in a statute what it means and means in a statute what it says." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). However, while the plain meaning of legislation is generally conclusive, this is not so in those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) (internal quotation marks omitted)). In cases where the plain language produces a result at odds with the drafters' intentions, "the intention of the drafters rather than the strict language, controls." *Id.* Courts should not use the plain meaning rule to undermine or distort the intent of Congress as expressed in legislative material. N. Singer, 2A *Sutherland Stat. Const.* § 48.01, at 278 (4th ed.1986); *see also Nu-Pulse, Inc. v. Schlueter Co.*, 853 F.2d 545, 548 (7th Cir.1988) (stating that courts may go beyond the plain words of a statute "to ensure that the true congressional intent is identified and given effect" when a literal construction "would lead to absurd results or would thwart the obvious purposes of the statute").

In the case of § 109(g)(2), a literal application of the statute undoubtedly produces a result that is at odds with Congress's intention in some situations. As evidenced by the statements of Senator Hatch, cited previously, Congress enacted § 109(g)(2) for the sole purpose of curbing abusive repetitive bankruptcy filings by debtors seeking to overcome the grant of relief to a creditor from a stay in a prior case. *See also* Norton & Norton, *supra*, § 115.7; *Hutchins*, 303 B.R. at 509 (stating that § 109(g)(2) "was enacted to curb debtor abuses of the bankruptcy code and make its use a last resort"); *In re Harris*, No. ——, 2005 Bankr.LEXIS 1629, at *17 (Bankr.N.D.Ga. July 29, 2005) (stating that legislative history of statute indicates that Congress intended § 109(g)(2) to "provide courts with greater authority to control abusive multiple filings") (quoting S.Rep. No. 65, 98th Cong. 1st Sess. 74 (1983)). Yet, as we have seen, the statute applies in situations where debtors are not abusive and in those situations it does not serve Congress's purpose. To the extent that

uously, thereby obtaining the protection of the automatic stay, so long as it did not dismiss the previous action while the motion for relief from stay was pending before the court." *In re Dickerson*, 209 B.R. 703, 707 (W.D.Tenn. 1997). Thus, "in cases where the relief from stay is granted prior to the voluntary dismissal, the debtor would be able to use the Bankruptcy Code to frustrate the ability of a creditor to regain its property—the exact result that § 109(g)(2) is designed to prevent." *Id.*

the statute harms innocent debtors, it also is at odds with Congress's intent in enacting the Bankruptcy Code, which was to provide "a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)).

■ Thus, § 109(g)(2) presents a dilemma. Its unambiguous language does not authorize judges to exercise discretion as to when to apply it. Yet, it is overly inclusive and if applied in some situations, causes a result that is at odds with Congress's intention. I conclude that § 109(g)(2)'s plain language can be reconciled with Congress's intent by applying the statute in all fact situations that fall within its terms (thereby recognizing its mandatory character) except for certain limited and clearly defined circumstances where it undeniably produces a result not intended by Congress. These circumstances are when the motion for relief from the stay has been withdrawn, dismissed or denied. "Congress could not possibly have intended to penalize the debtor for a creditor's motion that was filed in error or that lacks merit, and subsequent dismissal and refiling surely would not be abusive." Waxman, *Judicial Follies, supra,* at 164. *Collier* agrees, stating that "in light of its purpose, § 109(g)(2) should not be applicable if the debtor ... successfully defended against ... the motion for relief from the stay." 2 *Collier, supra,* § 109.08 at 109–54. This approach

reconciles the purpose of [§ ] 109(g)(2) with its language, without adding an exception for the court's discretion, and without adding a condition that there be a causal connection or that the motion be pending. It [produces a result] ... that is both equitable and consistent with the intent of Congress.

Waxman, *Judicial Follies, supra,* at 170.

■ Applying the above approach, I conclude that in the present case, the bankruptcy court properly denied the Trustee's motion to dismiss. This is so because the debtor successfully defended against Wells Fargo's request for relief from the stay. More specifically, after the bankruptcy court granted the request based on Wells Fargo's having mistakenly asserted that the Beals did not object to it, the court vacated the grant with Wells Fargo's agreement. In essence, Wells Fargo withdrew its request for relief from the stay. Therefore, the order of the bankruptcy court denying the Trustee's motion to dismiss is affirmed.

### III. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that the Trustee's motion for leave to appeal is GRANTED.

**IT IS FURTHER ORDERED** that the decision of the bankruptcy court is **AFFIRMED** and this case is **REMANDED** to the bankruptcy court for further proceedings consistent with this decision.